Commonwealth ex rel. Wright, Appellant, *v.*
Hendrick.

Argued May 1, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Dennis T. Kelly,* Acting First Assistant Defender, with him *Vincent J. Ziccardi,* Defender, for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for appellee.

OPINION BY MR. JUSTICE EAGEN, December 4, 1973:

By his own admission Fred Wright, the appellant, is the father of three children born out-of-wedlock to

one Beverly Thomas, a resident of Philadelphia. On February 5, 1964, in proceedings instituted under the provisions of the Pennsylvania Civil Procedural Support Law,[1] in the County Court of Philadelphia (now the Family Court Division of the Court of Common Pleas), Wright was ordered to pay $5 weekly towards the support of one of these children. On September 20, 1965, in a separate proceeding under the same statute, he was ordered to pay $5 weekly towards the support of the second of these children. On April 15, 1968, in a third and separate proceeding under the same statute, he was ordered to pay $5 weekly towards the support of the third such child.[2]

On May 28, 1971, Wright was brought before the Family Court Division of the Court of Common Pleas of Philadelphia via a writ of attachment for failure to comply with the aforesaid support orders. After a hearing during which Wright was without counsel, the court found that the total amount accrued under said orders was $4195; that Wright was credited with payments of only $213 since entry of the first order, and, hence, was in arrears in the amount of $3982. The court then entered the following order: "$1000 or six months in the House of Correction." The one thousand dollars was not paid and Wright was committed.

On July 13, 1971, habeas corpus proceedings were instituted on Wright's behalf contesting the validity of the commitment order. After a counseled evidentiary hearing on August 4th, habeas corpus was denied. An appeal was filed in the Superior Court, and that court on August 12th issued a writ of supersedeas staying the order of commitment pending appeal.[3]  Subse-

---

[1] Act of July 13, 1953, P. L. 431, as amended, 62 P.S. §2043.31 et seq.

[2] The validity of these orders is not now questioned.

[3] While the record is silent as to this, the Commonwealth's brief states Wright has been at liberty since August 12, 1971.

quently, the Superior Court unanimously affirmed the trial court's order denying habeas corpus by a "Per Curiam" order, without an opinion. See 221 Pa. Superior Ct. 756, 289 A.2d 176 (1972). We granted allocatur.

Inter alia, it is argued Wright's failure to comply with the support orders was due to indigency, and that imprisoning an indigent for failure to pay a support order violates the Equal Protection Clause of the United States Constitution. In view of the conclusions that follow, it is unnecessary to reach this constitutional issue in this case.

As noted before, the support proceedings, here involved, were instituted and prosecuted under the Act of 1953, supra, 62 P.S. 2043.39(b), which provides as follows: "Any *wilful* failure to comply with any order of the court may be deemed a contempt of court and except in counties of the first class may be punishable by the court by commitment to the county jail or house of correction. In counties of the first class, any person who is found, after hearing, to have *wilfully* failed to comply with any order of the court may be adjudged in contempt of court and may be punished by the court by commitment to the county jail or house of correction until compliance with said order, but in no case for a period exceeding six (6) months, and the court in its order shall state the condition upon which fulfillment will result in the release of such person." [Emphasis added.]

Thus, the act explicitly states that in counties of the first class [Philadelphia is a county of the first class], a *wilful* noncompliance of a support order, entered pursuant to the provisions of the Act of 1953, is necessary before there may be a finding of contempt and imposition of a jail sentence.

In the habeas corpus hearing in the trial court, Wright testified: that he was without funds and unable to pay any sum towards the arrearage due on the sup-

port orders; that he was in prison from June, 1968 to June 11, 1970, under a sentence imposed following his conviction for an unrelated criminal offense; that he was able and willing to work, but had been continuously unemployed since November, 1970, despite efforts to gain employment; and, that he was currently being supported by his mother. There was no testimony from any source to discredit or disprove this testimony.

Wright's request that he be released from imprisonment to further his attempt to find employment was denied by the court.

While the term "wilful" is a word of many meanings, depending on the context in which it is used, it seems clear to us that, as used in the statute instantly involved, "wilful" means an intentional, designed act and one without justifiable excuse. As noted before, the only testimony in the trial court was that Wright was then penniless and unable, through no fault of his own, to pay any sum on the delinquencies. Such a record does not support a finding of wilful noncompliance, required by the Act of 1953. Compare, *Commonwealth v. Pewatts*, 200 Pa. Superior Ct. 22, 186 A. 2d 408 (1962).

The trial court reasoned that since Wright was young and in good health, his continued unemployment, coupled with his chronic failure to make contributions towards the support of the children, constituted a wilful disregard of the court's orders. To this, we cannot subscribe. If the record warranted the conclusion that Wright refused to work, and, thus through his own fault was rendered incapable of making payments on the outstanding support orders, this might well constitute a wilful noncompliance under the Act of 1953. However, this is not such a case, and whether criminal sanctions may constitutionally be imposed, under the circumstances, need not be resolved here. The determination of that complex issue must await a proper case.

In view of the foregoing, the remaining assignments of error need not now concern us.

The orders of the Superior Court and the trial court are reversed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE NIX:

In a well-reasoned opinion written by Mr. Justice EAGEN, the majority properly concludes that the instant appellant was unjustly confined for contumacious conduct upon a record barren of evidence of willful misbehavior. I am in complete accord with the reasoning and result of the majority opinion but I strongly believe that some comment must be made as to the underlying factor that produced this result.

Mr. Wright appeared before the court below on May 28, 1971, under a writ of attachment pursuant to the Act of July 13, 1953, P. L. 431, §9; 1957, July 3, P. L. 452, §1, 62 P.S. 2043.39. An adjudication of contempt was found under subsection (b) after the following colloquy which represents the *entire* record of the proceeding resulting in the questioned confinement: "BY THE COURT: Q. You are Fred Wright? A. Yes, sir. Q. Also known as Fred Gordy? A. Yes. Q. Do you live at 1433 North 10 Street? A. Yes. Q. You have three children with Beverly Thomas; is that right? A. Yes, sir. Q. There's an order of $5.00 for each one of them. The total amount to be paid in is $4,195.00, and you paid in a grand total of $213.00. Your last payment was $20.00 in October 1965. You owe $3,982.-00 and you also owe $42.00 on the lying-in expenses. The mother of these three children is on relief, getting $211.50 twice a month. Why haven't you paid the

money? A. I have been away for awhile.[1] THE COURT: $1,000 or six months in the House of Correction."

I cannot conceive of a record that could be more illustrative of the potential injustice from the failure to provide the appellant with counsel. This was the type of charade of justice that caused concern to the United States Supreme Court in *Powell v. Alabama,* 287 U.S. 45 (1932) : "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect." 287 U.S. at 68-69.

In *Argersinger v. Hamlin,* 407 U.S. 25 (1972), the Court made clear that the above cited language of *Powell* was not limited to matters involving capital offenses but rather "that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his

---

[1] This reference was to appellant's incarceration for an unrelated offense.

trial." Without attempting to determine whether the contempt power conferred under subsection (b) of the Act of July 13, 1953, supra, §9 is criminal or civil[2] the proceeding may lead to the deprivation of substantial rights justifying the right to counsel even if it be determined that the contempt is civil. See *In Re: Adoption of R.I.*, 455 Pa. 29, 312 A. 2d 601 (1973). Where one stands in jeopardy of the deprivation of his liberty, I can find no persuasive reason to allow his right to be furnished counsel if indigent to turn upon a highly sophisticated determination as to whether the proceeding is criminal or civil in nature.

I therefore must conclude that Mr. Wright was entitled to relief both for the reason set forth by the majority and also for the failure to provide counsel or establish that there had been a knowing and intelligent waiver of that right.

Mr. Justice ROBERTS joins in this concurring opinion.

---

[2] In *Altemose Construction Co. v. Building & Construction Trades Council*, 449 Pa. 194, 296 A.2d 504 (1972), we noted the difficulty involved in the task of distinguishing between criminal and civil contempt particularly where the contemptuous conduct is the violation of a court order which was initiated at the behest of a private litigant. The accepted test appears to be that when the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. *Knaus v. Knaus*, 387 Pa. 370, 376; 127 A. 2d 669 (1956).