365 A.2d 1260
Mary CRISLIP
v.
Ralph HARSHMAN, Appellant.

Superior Court of Pennsylvania.
Nov. 22, 1976.

350

Marc Kranson, Pittsburgh, for appellant.

Samuel P. Kamin, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge.

This is an appeal from a lower court order holding appellant in contempt for failing to make court-ordered support payments. On appeal, appellant raises three issues. We find that the matter must be remanded for a further finding as to the wilfulness of the contempt.

A detailed review of all the background facts is not necessary to our immediate disposition of the case. It will suffice to note, appellant and appellee separated after nine years of marriage which produced four children. Appellee attempted, by recourse to The Pennsylvania Civil Procedural Support Law,[1] to secure the payment of support money from appellant, but was largely unsuccessful, notwithstanding various court proceedings and wage attachment orders. The first of several support orders was entered on December 1, 1969. The most recent modification was made on January 16, 1973, directing appellant to pay $50.00 per week.

On March 31, 1975, an order of the lower court informed appellant that he was apparently $8,508.25 in arrears on support orders. Appellant was directed to appear for a hearing on April 24, 1975.

---

1. Act of July 13, 1953, P.L. 431, § 1 (62 P.S. § 2043.31) *et seq.*

Appellant appeared with counsel at the hearing. After taking testimony, the judge found that appellant was in contempt of court for failing to make the payments as provided by the various orders. At this time, appellant was informed that if he did not pay $2,000.00 on the arrearages within sixty days he would be imprisoned.

A second hearing was scheduled for July 15, 1975, to determine if appellant had paid the $2,000.00. The $2,000.00 had not been paid and appellant was imprisoned. Appellant appealed to our court and filed a motion in the lower court for an order of supersedeas. This motion was denied and appellant filed a similar motion with our court. We granted supersedeas.

■■ Appellant first argues that the procedure followed by the lower court did not comply with the requirements for a civil contempt proceeding. Five elements are essential to a civil contempt adjudication: (1) a rule to show cause why an attachment should not issue, (2) an answer and hearing, (3) a rule absolute (arrest), (4) a hearing on the contempt citation, and (5) an adjudication of contempt. *Simmons v. Simmons*, 232 Pa.Super. 365, 335 A.2d 764 (1975). A review of the proceedings here employed indicates that appellant was procedurally afforded the requisite protection.

There is no doubt that the lower court order of March 31, 1975, informing appellant that he was in arrears on payments due on the various support orders and that he was to appear on April 24, 1975, for a hearing, constitutes a rule to show cause. Appellant did appear and at that time he orally answered the charge against him.

By informing appellant of the nature of the meeting scheduled for April 24, 1975, the court was in effect setting a date certain for appellant to answer the charges, *i. e.*, the date of this first hearing. At this first hearing, appellant gave testimony concerning his income, expenses, and the amount of support he had paid. He also at-

tempted to explain why he had failed to comply with the orders and why he had not petitioned for a modification of the order.

Following the taking of testimony, the judge found that appellant was in contempt of court. This finding was, admittedly, premature. The judge should have made the rule absolute and scheduled another hearing to determine the merits of the contempt charge. Instead, the judge gave appellant an opportunity to purge himself of the contempt by fulfilling a condition imposed by the court. The court set a date for a second hearing at which the issue of contempt would be finally adjudicated. If, at the second hearing, appellant had successfully complied with the condition promulgated by the court, the contempt finding would have been reversed. July 15, 1975, was set as the date for this second hearing.

At this second hearing, it became apparent that appellant had not successfully purged himself of the contempt citation. After once more hearing testimony as to appellant's financial history, the trial judge again found appellant in contempt and sentenced him to 30 days in the county jail in lieu of a $2,000.00 payment on the arrearages.

We are, therefore, faced with a situation wherein appellant was given two hearings before any official sanctions were leveled against him. Although the nomenclature ascribed to the various hearings by the lower court conveys, on the surface, a message inconsistent with the rules, when we bore through the terminology and extract the core of the hearings, we find that, in substance, the procedures employed comply with the requirements.

Although the hearing of April 24, 1975, resulted in a finding of contempt rather than a determination that the rule was not discharged, the result of the court's determination was the same as simply making the rule absolute. A second hearing was scheduled, thus affording appellant all of the necessary procedural requirements.

Appellant suffered no punishment until after the determination of contempt in the second hearing. He was informed of the charge against him and apprised of the means of purging himself of contempt and of avoiding punishment. That is all that is required by the rules.

Appellant next contends that the evidence elicited at the contempt hearing was insufficient to prove that he wilfully failed to comply with the court support orders. Our review of the evidence convinces us that, on the record presently before us, it is impossible to make an objective determination of the propriety of the contempt citation.

The Pennsylvania Civil Procedural Support Law provides as follows:

"(b) Any wilful failure to comply with any order of the court may be deemed a contempt of court and except in counties of the first class may be punishable by the court by commitment to the county jail or house of correction. In counties of the first class, any person who is found, after hearing, to have wilfully failed to comply with any order of the court may be adjudged in contempt of court and may be punished by the court by commitment to the county jail or house of correction until compliance with said order, but in no case for a period exceeding six (6) months, and the court in its order shall state the condition which upon fulfillment will result in the release of such person." Act of July 13, 1953, P.L. 431, § 9 (62 P.S. § 2043.39(b)), *as amended.*

"Wilful" has been defined as "an intentional, designed act and one without justifiable excuse." *Commonwealth ex rel. Wright v. Hendrick,* 455 Pa. 36, 40, 312 A.2d 402, 404 (1973).

In the case at bar, appellant testified that he had failed to pay the support orders because he was unemployed and had no funds. He also testified that his ex-

wife was aware of his unemployed status and that he had notified a counselor in the Family Division of his employment problems. He stated that he assumed that the arrearages would not accumulate while he was unemployed, but he did admit that he did not apply for a cancellation of arrearages. However, appellant's positive evidence is clouded by indications that, at various times, he had failed to make any payments even when it appeared that he did have the requisite funds. For example, appellant often failed to make even token support payments from his unemployment compensation.

In any event, the lower court in its opinion stated " . . . the [appellant] did not offer *any* evidence which would excuse his conduct in failing to obey the Orders of Support." (emphasis added) Such a determination is not warranted by the testimony given. Appellant did attempt to explain and justify his non-compliance with the court orders. We must remand for a considered determination by the lower court as to whether appellant's conduct was "wilful" as defined in *Commonwealth ex rel. Wright v. Hendrick, supra.*

We have determined that an additional hearing is required, and we must further emphasize that if, on remand, the lower court again determines that appellant is in wilful contempt, the condition imposed upon appellant for purging himself of the contempt must be one which appellant is capable of performing. "An order committing a defendant to prison for a civil contempt until he does something which is apparently beyond his power to do is clearly an order which this Court cannot approve." *Knaus v. Knaus,* 387 Pa. 370, 380, 127 A.2d 669, 674 (1956). However, if appellant is presently unable to fulfill the conditions of the order because of some voluntary act on his part, done to avoid compliance, he will not escape sanction. As we said most recently in *Barrett v. Barrett,* 237 Pa.Super. 590, 595–96, 352 A.2d 74, 77 (1975):

"In support cases such as this, judges of the courts of common pleas are required to state the conditions which, if fulfilled, will cause the civil contemnor's immediate release from prison. *See* the Revised Uniform Reciprocal Enforcement of Support Act (1968), Act of Dec. 6, 1972, P.L. 1365, No. 291, § 42 (62 P.S. § 2043–1), *et seq. See also Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669 (1956). The orders imposed by the lower court in the instant case contained the condition that appellant pay certain sums toward the arrearages in order to secure his release, in compliance with Pennsylvania law.

"Appellant incorrectly perceives the purpose of the orders imposed upon him. He believes that he was imprisoned because he is indigent. However, his characterization is not correct. He was imprisoned for willfully violating court orders with which he was fully capable of complying when the orders were entered. The fact that appellant may be indigent at present has no bearing on his failure to support his wife and children when he was able. Were we to agree with appellant's belief that no indigent may be imprisoned for civil contempt by willfully failing to support his dependents, even though the indigency was voluntarily created, the courts of the Commonwealth would lose all power to enforce support orders. We will not so hold."

In the instant case, the lower court stated: " . . . I am ordering you to serve 30 days in the County Jail, or if you pay the $2,000 you will be released immediately." (NT 15) Before we will sanction this order, we must have indication that appellant did not have the capability to fulfill the condition precedent to his release from prison, or, if he does not have the capability, he has wilfully caused his inability to avoid compliance. There is no such indication in the record now before us.

The supersedeas is terminated, the order of the lower court dated July 15, 1975, is vacated, and the case is remanded for further hearing consistent with this opinion.

HOFFMAN, J., files a concurring and dissenting opinion.

SPAETH, J., files a concurring and dissenting opinion in which CERCONE, J., joins.

HOFFMAN, Judge (concurring and dissenting).

I agree with the Majority that the procedure followed by the lower court substantially complied with the requirements of *Commonwealth ex rel. Magaziner v. Magaziner,* 434 Pa. 1, 253 A.2d 263 (1969), and that appellant suffered no prejudice from any technical disparities. See also *Simmons v. Simmons,* 232 Pa.Super. 365, 335 A.2d 764 (1975). I also agree that we must remand for a hearing as to whether appellant "willfully" refused to pay the arrearages. See *Commonwealth ex rel. Wright v. Hendrick,* 455 Pa. 36, 312 A.2d 402 (1973). However, I do not agree that appellant may be committed to prison for civil contempt if he is presently unable to pay the arrearages specified by court order.

The Supreme Court in *In Re Martorano,* 464 Pa. 66, 78, 346 A.2d 22, 28 (1975), stated the test for distinguishing civil contempt from indirect criminal contempt as follows: "If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal." See also *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956). If appellant cannot presently comply with the lower court's order, then he no longer "carries the keys of his prison in his own pocket" and the court cannot coerce the

contemnor to use the keys. *Knaus v. Knaus,* supra, at 379, 127 A.2d at 673. The court's purpose could only be to punish the contemnor for past disobedience of the court's order. Such a purpose requires adherence to the safeguards employed in criminal contempt cases. See Act of June 23, 1931, P.L. 925, § 1; 17 P.S. § 2047.

Therefore, I would remand for a hearing as to whether appellant "willfully" refused to pay the arrearages and whether he has the present ability to pay the arrearages specified by the court order.

SPAETH, Judge (concurring and dissenting).

I agree with the majority's conclusion that the order of the lower court must be vacated and the record remanded for determination whether appellant's failure to comply with the lower court's order was wilful. I cannot, however, agree with the majority's conclusion that the procedure culminating in the lower court's purported finding of contempt "afforded [appellant] the requisite protection." Opinion of majority 243 Pa.Super. at 352, at 1261.

The parties were married in 1960, and separated in 1969. On December 1, 1969, an order was entered by agreement in the Allegheny County Court of Common Pleas directing appellant to pay $75.00 a week for the support of his children. This order was entered in response to a complaint filed by appellee under Civil Procedural Support Law, Act of July 13, 1953, P.L. 431, § 1 *et seq.,* 62 P.S. § 2043.31 *et seq.*[1]

Appellant failed to comply with this order, and on April 24, 1970, his wages were attached and his employer directed to pay $75.00 a week to the Family Division of

1. Accordingly, no issue regarding criminal sanctions is presented. See the Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 C.P.S.A. § 4322, and the Act of May 24, 1917, P.L. 268, § 1, as amended, 19 P.S. § 1151. Appellee did file a criminal complaint for non-support in Aug., 1966, but the hearing on it was continued indefinitely.

the Allegheny County Court of Common Pleas. Appellant's employer was the Werner Continental Transportation Company of Minnesota; appellant was a truck driver in the Pittsburgh area.

Appellee and the children moved to Wisconsin, and on July 14, 1970, the payee of the attachment order was changed to the Kenosha County, Wisconsin, Department of Public Welfare. In July of 1971, appellee filed a proceeding under the Wisconsin Uniform Reciprocal Enforcement of Support Act, § 52.10 Wis.Laws of 1968, and on July 22, 1971, a judge of the Kenosha County Court determined that appellant owed a duty to support his children and that the children's needs were $75.00 a week. The Wisconsin proceedings were certified to Allegheny County, and a hearing was ordered. When appellant failed to appear, a body attachment issued. On December 15, 1971, after hearing, appellant was ordered to pay $40, and the body attachment was dismissed, "same order to remain in force" (presumably this referred to the December 1, 1969, order to pay $75 a week).

Appellee moved back to Allegheny County from Wisconsin, and in May of 1972, filed a petition requesting "collection of the arrears and enforcement of the order [of December 1, 1969]." On June 8, 1972, after hearing, the December 1, 1969 order was modified. Appellant was directed to pay $150 a month for the support of his children. Since appellant was then working as a truck driver for the Modern Transfer Company of Etna, Pennsylvania, the order attaching his wages at Werner Continental Transportation was dissolved, and an order attaching his wages at Modern Transfer was issued. Arrearages were ordered "to stand" (the amount of arrearages was not specified); appellant was given partial custody of the children; and the case was ordered to be reviewed in 90 days.

This review did not occur. However, on January 16, 1973, in response to a request by a counselor of the Fam-

ily Division, a review hearing was held with the result that the order of June 8, 1972, was modified and appellant was directed to pay $50 a week for the support of his children. The order attaching appellant's wages from Modern Transfer was similarly modified. Nothing was said about arrearages.

On March 31, 1975, an order of the lower court issued informing appellant that it appeared to the court that he was "in arrears on [the order of January 16, 1973] in the amount of $750 and $7,758.25 arrears on previous orders." The order directed appellant to appear on April 24, 1975, "for a hearing at which time you may be found in Contempt of Court and be committed to a term in jail, pay a fine, or both."

Appellant did appear, with counsel. After hearing testimony, which will be discussed later, the court stated:

> THE COURT: It is my finding you are in contempt of Court. I am going to give you a period of sixty days to pay $2,000 on the arrearages. And if you do not pay it within sixty days I am ordering you to be sentenced to jail and at that time you will have a hearing. You will have a hearing which will be set up in—all right, you will have until June 24. I will give you a day certain to make the payment of $2,000.

> \* \* \* \* \* \*

> MR. KRANSON [appellant's counsel]: Ask one question for clarification. Have you adjusted those arrearages to $2,000?

> THE COURT: No, I have not reduced the arrearages. The arrearages shown in my opinion are still valid and they are $8,708.25. I am ordering him to make payment of $2,000 by June 24, 1975, and if he does not do so we will hold a hearing on July the 15th, 1975, to determine whether or not I will send him to jail.

A hearing was held on July 15. Again, the testimony will be discussed later. When it appeared that appellant had not paid the $2,000, the court stated:

I am ordering you to serve 30 days in the County Jail, and if you pay the $2,000 you will be released immediately.

Appellant appealed to this court and filed a motion in the lower court for an order of supersedeas. When the motion was denied, appellant filed a motion in this court for an order of supersedeas; the motion was granted.

## I

## THE PROPRIETY OF THE LOWER COURT'S PROCEDURE

Section 9 of the Civil Procedural Support Law, *supra,* 62 P.S. § 2043.39, provides for the enforcement of court orders. Paragraph (a) provides that

[t]he court, upon receiving information, either through written application or at any hearing, that there is a failure to comply with the order of the court, may issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named be brought before the court

. . . .

Paragraph (b) provides that

[a]ny wilful failure to comply with any order of the court may be deemed a contempt of court and except in counties of the first class may be punishable by the court by commitment to the county jail or house of correction.

. . . . . .

Paragraph (c) provides for the attachment of wages, and paragraph (d) provides for "periodic reports to the court of defaults in and failure to comply with any order of the court."

As has been indicated, the lower court did not, as provided in paragraph (a), "issue attachment proceedings, directed to the Sheriff;" accordingly, the validity of thus initiating an enforcement proceeding need not be discussed. *But see Messmore's Estate,* 293 Pa. 63, 67–68, 141 A. 724, 726 (1928); *Douglass-Whisler Brick Co. v. Simpson,* 233 Pa. 517, 519, 82 A. 760, 761 (1912); *New Brighton &c., R. R. Co. v. The Pittsburgh &c. R. R. Co.,* 105 Pa. 13, 24 (1884). Instead, the court ordered appellant to appear for a hearing, which he did, and held him in contempt. While paragraph (b) does authorize a contempt order, upon proof of "[a]ny wilful failure to comply with any order of the court," it is silent as to the procedure to be followed in arriving at such an order.

It may be surmised that the reason for this silence is that the procedure will differ, according to whether the contempt is civil or criminal. *See, e. g.,* Act of June 16, 1836, P.L. 784, §§ 23 and 24, 17 P.S. §§ 2041 and 2042, classifying penal contempts and specifying the punishment that may be imposed. Accordingly, to determine the propriety of the lower court's procedure in the present case, it is first necessary to determine whether appellant's contempt, assuming he was in contempt, was civil or criminal.

This determination involves no difficulty, for the law has only recently been comprehensively examined by our Supreme Court. *In re Martorano,* 464 Pa. 66, 346 A.2d 22 (1975). There is was said (the footnotes collecting the authorities are omitted):

There is nothing inherent in a contemptuous act or refusal to act which classifies that act as "criminal" or "civil." The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contemptuous behavior. For example, it is clear that a contemptuous refusal to testify before a grand jury may be dealt with either [as] a criminal contempt, civil contempt, or both.

These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.

*Id.* at 77, 346 A.2d at 27–28.

Applying these principles, the adjudication of contempt here was civil; its dominant purpose was "to prospectively coerce [appellant] to comply with" the lower court's several orders of support, on which arrearages had accumulated. *See also Knaus v. Knaus,* 387 Pa. 370, 378, 127 A.2d 669, 673 (1956):

The factors generally said to point to a civil contempt are these: (1) Where the complainant is a private person as opposed to a government or a governmental agency; (2) where the proceeding is entitled in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion.

Except for the last (non-support may be a crime, *see* footnote 1, *supra*), all of these criteria are met here.

It being determined that the adjudication of contempt was civil, the procedure required of the lower court is both long-settled and recently insisted upon.

The leading case is *Commonwealth v. Snowden,* 1 Brewster 218 (Pa.1868). James Ross Snowden was Pro-

thonotary of the Supreme Court. It appeared that a certain prisoner was found in possession of naturalization certificates purporting to be signed and sealed in blank by Snowden. Thereupon a rule was granted on Snowden to show cause why an attachment should not issue against him. At the hearing on the rule, Snowden produced evidence that in fact he had not signed the certificates. SHARSWOOD, J., ruled, however, that "as the impression of the seal appeared to be genuine," *id.* at 219, the rule should be granted. Snowden filed an answer in which he denied any knowledge of the certificates. A hearing was held, and after considering the testimony, which is discussed in the opinion, the court concluded that in fact Snowden had not known about the certificates, and further that he had not been guilty of gross negligence in allowing the business of his office to be so transacted that the certificates might be surreptitiously obtained. The rule was therefore discharged. In explaining this procedure, the court stated:

> A rule is generally granted in the first instance on affidavits, upon the return of which the defendant answers on oath, the evidence is heard, and if the Court should be of opinion that the fact on which the rule was taken is not sufficiently answered or excused, and that in point of law a contempt has been incurred, an attachment is awarded when the defendant is brought in on this writ to answer interrogatories propounded to him on behalf of the Commonwealth, in whose name the writ always issues, and if he gives such answers as purge him from the criminality, he must be discharged.

*Id.* at 219, citing *inter alia* Blackstone's Commentaries 287.

In *Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 5, 253 A.2d 263, 266 (1969), this statement of the law was quoted as "set[ting] forth the practice on at-

tachment for civil contempt," the Supreme Court going on to add:

> In other words, it is a several step process that must take place to hold one in civil contempt—rule to show cause why an attachment should not issue, answer and hearing, rule absolute (arrest), hearing on the contempt citation, adjudication of contempt.

*Id.* at 6, 253 A.2d at 266.

We recently applied this statement of the law in *Simmons v. Simmons*, 232 Pa.Super. 365, 335 A.2d 764 (1975). There too was an appeal from an order of contempt. Because "[t]he rule issued without opportunity to answer—no hearing was held specifically directed to the contempt citation subsequent to the determination of the contempt . . . ," *id.* at 371, 335 A.2d at 767, the order was vacated and the record remanded.

In its opinion in the present case the lower court states that "[t]hroughout this case the court strictly adhered to the procedure in civil contempt cases as most recently set forth in *Simmons v. Simmons* . . . , which is as follows: Rule to show cause why attachment should not issue answer and hearing, rule absolute, hearing on the contempt citation, adjudication of contempt." Elsewhere in the opinion it is indicated that in making this statement the court means that the order of March 31, 1975, directing appellant to appear for a hearing on April 24, was the rule to show cause, the hearing on April 24 was the answer and hearing, and the result of the hearing was to make the rule absolute; the hearing on July 15, when appellant was asked whether he had paid the $2,000, was the hearing on the contempt citation; and the order of commitment resulting from that hearing was the adjudication of contempt. The record, however, will not sustain this characterization of the procedure that was followed.

First, treating the order of March 31 as a rule to show cause, appellant never filed—nor was he permitted to file —any answer.

Second, and a much more important defect, the hearing of April 24 was not only to decide whether the rule should be made absolute; it was the contempt hearing, and it resulted in an adjudication of contempt. Thus, after only the briefest testimony—two pages—the court stated: "All right, let's go into the contempt hearing." (N.T. 6, 4/24/75). After hearing further testimony, the court stated: "It is my finding you are in contempt of court." (N.T. 17, 4/24/75).

Third, although the hearing of July 15 was a second hearing, it was not the sort of second hearing that is required. As shown by *Commonwealth v. Snowden, supra,* the first hearing is only to decide whether an attachment should issue; if it does issue, then the second hearing is to decide whether the person attached shall be held in contempt, or, as succinctly stated in *Magaziner:* it is a "hearing on the contempt citation, [and an] adjudication of contempt." *Magaziner v. Magaziner, supra* 434 Pa. at 6, 253 A.2d at 266. Here, appellant had already, at the April 24 hearing, been adjudicated in contempt. The only purpose of the July 15 hearing was stated by the lower court itself, at the conclusion of the April 24 hearing: "[I]f he does not [pay the $2,000] we will hold a hearing on July the 15, 1975, to determine whether or not I will send him to jail." (N.T. 18, 4/24/75).

In this regard a further observation may be made. The second hearing required by *Snowden, Magaziner,* and *Simmons* will as a rule be fuller and more searching than the first. The facts of *Snowden,* which have been stated above, illustrate this point. In the present case when appellant's counsel offered to prove why the arrearages had accumulated, appellee's counsel objected on the ground that "[t]hese matters were contained in the hearing that was held on April 24, 1975. A rehash of

the matters that have previously been adjudicated by this Court." (N.T. 4, 7/15/75) The court ruled: "We did go into it on April 24th. But I will be patient and listen to it again. So I will overrule the objection." The Court added: "With the understanding that it is repetitive, but I will listen." (N.T. 5, 7/15/75.)

Accordingly, there can be no question that the "several step process" required by *Snowden, Magaziner,* and *Simmons* was not followed. This procedural defect alone requires that the order of the lower court be vacated and the record remanded with a *procedendo.* The order of March 31 may serve as a rule to show cause, but appellant should be permitted to file an answer within a time specified by the court. The court should then hold the first hearing to determine whether "the fact on which the rule was taken is . . . sufficiently answered or excused," *Commonwealth v. Snowden, supra* 1 Brewster at 219, and, if not, should thereafter proceed to the second hearing, as required by the cases.

## II

### WHETHER THE EVIDENCE SHOWED WILFUL DISOBEDIENCE

Since on remand a further hearing will presumably be held, and additional evidence received, it is unnecessary to rule on appellant's contention that the evidence so far received did not show "[a]ny wilful failure to comply with any order" of the lower court. Civil Procedural Support Law, *supra,* § 9(b), 62 P.S. § 2043.39(b). It is nevertheless appropriate to refer to the pertinent principles of law so that on remand the further hearing may be conducted in accordance with those principles.

As appears from the Civil Procedural Support Law, the issue will be whether there was a "wilful failure to comply." The meaning of this requirement was explained in *Commonwealth ex rel. Wright v. Hendrick,*

455 Pa. 36, 312 A.2d 402 (1973), where the Supreme Court said:

> While the term "wilful" is a word of many meanings, depending on the context in which it is used, it seems clear to us that, as used in the statute instantly involved, "wilful" means an intentional, designed act and one without justifiable excuse.

*Id.* at 40, 312 A.2d at 404.

In *Wright* the respondent was some $4,000 in arrears in payments for the support of his children. The lower court ordered him to pay "$1,000 or six months in the House of Correction." The $1,000 was not paid and the respondent was committed. In the ensuing habeas corpus hearing it appeared that the respondent was without funds and unable to pay any sum towards the arrearages, that he had been in prison on conviction of an unrelated criminal offense, that he was able and willing to work but had been continuously unemployed since shortly after release from prison, and that he was being supported by his mother. "There was no testimony from any source to discredit or disprove this testimony." *Id.* at 40, 312 A.2d at 404. "Such a record," said the Supreme Court, "does not support a finding of wilful noncompliance . . . ." *Id.*

As the record stands now in the present case, it is not dissimilar from the record in *Wright*. This is not to say that appellant may not eventually be properly adjudicated in contempt. It is to say, however, that the lower court must take account of appellant's contentions.

Specifically, appellant (whose testimony was uncontradicted) testified that almost all of the arrearages accumulated in 1970 and 1971. He said that during those years he was unemployed. He agreed that he had never applied for cancellation of arrearages, but said that his (then) wife knew he was not working; he also said he told a counselor in the Family Division that he was not

working, further stating that he did not realize that arrearages were accumulating, since he knew his wages were attached: "I thought it would stop. The $75 was taken out of my pay, I lost my job, I thought it would stop." (N.T. 13, 4/24/75.) When asked, "And would you say for the years 1972, 1973, 1974 you have abided with [sic] the Court Order for the support of your children?", he replied, "Yes." (N.T. 9, 7/15/75.) With regard to 1975, he said he had worked five days only, and otherwise had been on unemployment compensation of $96.00 every two weeks. At the July 15 hearing, he acknowledged that since the April 24 hearing he had missed four of the required $50 weekly payments, saying, "I figured I got a pretty good record, paying $50 a week out of my unemployment check." (N.T. 12, 7/15/75.) With respect to the $2,000 payment, he testified:

Q. Would you explain to the Court why you haven't paid the $2,000 which His Honor asked you to pay on April 24?

A. I think it's self-explanatory. Being unemployed you just don't pull $2,000 out of your hat.

Q. Do you have any assets which you could sell to accumulate this type of cash?

A. I probably could. I got a car.

Q. You need your car?

A. But I need my car for work.
(N.T. 12, 7/15/75.)

In its opinion the lower court simply states:

At the hearing the defendant did not offer any evidence which would excuse his conduct in failing to obey the Order of Support.

This is not an adequate characterization of the record.

## III

## THE PROPRIETY OF THE FORM OF THE ORDER

It will be recalled that the order of the lower court was, " . . . 30 days in the County Jail, or if you pay the $2,000 you will be released immediately." Since on remand another order of contempt may be entered—for as just discussed, appellant may in fact be guilty of wilful disobedience—it is appropriate to consider appellant's contention that this order was improper.

It has been seen that the purpose of an order of civil contempt is to coerce compliance. *In re Martorano, supra; Knaus v. Knaus, supra.* From this it follows that compliance must be possible; if it is not, the order is improper. In *Knaus* the defendant was committed for civil contempt of an order enjoining him from getting a divorce in Arkansas; in defiance of the order, he had gotten the divorce, his wife had appealed, the Arkansas Supreme Court had affirmed, and he had remarried. Reversing, the Supreme Court asked, "But what could the appellant do to purge himself of this contempt?", going on to say:

> There is in this record no evidence which discloses what appellant could do to remedy this matter at the time the attachment issued, or when his commitment was ordered. Before a defendant may be committed for civil contempt, it is essential that it be clear what is required of him in order to purge himself of the contempt, and the commitment order should state the condition which when complied with will release him. In the absence thereof, a commitment for civil contempt is improper. An order committing a defendant to prison for civil contempt until he does something which is apparently beyond his power to do is clearly an order which this Court cannot approve.

*Knaus v. Knaus, supra* 387 Pa. at 380, 127 A.2d at 674. And *cf. Casco Prod. Co. v. Hess Bros.,* 184 Pa.Super. 47,

132 A.2d 922 (1957) (noting that this reasoning does not apply when the contempt is criminal, the purpose of the order then being punitive and not to advance private interests). *See also Catena v. Seidl,* 68 N.J. 224, 343 A.2d 744 (1975) (witness held in civil contempt released after five years on ground that there was no substantial likelihood that further confinement would accomplish the coercive purpose of the contempt order).

It follows that if in the present case appellant is on remand adjudicated in contempt, the order must not require him to do something apparently "beyond his power." Specifically, if he is to be ordered to pay a lump sum on arrearages, such as $2,000, it must appear that he can do so,[2]

CERCONE, J., joins in this opinion.

**2.** This is not to say that one can avoid any commitment for contempt because of poverty. *Cf. Messmore's Estate,* 293 Pa. 63, 141 A. 724 (1928) (executor in contempt for failure to pay beneficiaries could not purge himself by plea of poverty). The point at issue here concerns only commitment for civil contempt.