J-A12003-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| J.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| L.T. | |
| | No. 1394 WDA 2016 |

Appeal from the Order Dated August 26, 2016
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 07-003697

BEFORE: OLSON, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY SOLANO, J.:                    FILED OCTOBER 26, 2017

In this, his ninth appeal in this custody case,[1] J.R. ("Father") appeals pro se from the order of August 26, 2016, which denied his petition for a hearing to find L.T. ("Mother") in contempt. We affirm.

Father and Mother share physical and legal custody of their ten-year-old biological child (born April 2007). According to the custody order of March 24, 2015, each parent has physical custody of the child on an alternating weekly schedule, starting on Fridays at 3:00 p.m. Neither parent

_____

[1] Father's tenth appeal, No. 60 WDA 2017, was disposed of on August 28, 2017, by an unpublished memorandum. The other appeals were at Nos. 1870 WDA 2015, 2002 WDA 2015, 456 WDA 2016 (see unpublished memorandum of Feb. 21, 2017); 1490 WDA 2015 (dismissed on Feb. 5, 2016, for failure to file a brief); 494 WDA 2015 (see unpublished memorandum of Jan. 22, 2016); 391 WDA 2015, 495 WDA 2015 (see unpublished memorandum of Dec. 30, 2015); and 814 WDA 2015 (quashed as interlocutory on July 2, 2015).

needs the other's approval to enroll the child in extra-curricular activities or is obligated to take the child to any extra-curricular activities while exercising physical custody. The parents are to notify each other of enrollment by use of a shared "Our Family Wizard" computer calendar program; but so long as sufficient notice of an upcoming extra-curricular activity has been provided to the other parent, "the failure to accurately modify the calendar is not a basis for an allegation or finding of contempt." Order, 3/24/15, at ¶ 2(c)(iii). The order also provides that the child shall be available for telephone contact with the non-custodial parent every day at 7:00 p.m.

On July 12, 2016, Father filed a pro se petition for a contempt hearing. In his petition, Father alleged that Mother was in violation of the custody order for the following reasons: (1) the child told Father during a telephone conversation that he would be attending summer camp "beginning this week," but Mother did not provide notice to Father of the child's enrollment in summer camp by entering that information in Our Family Wizard, see Pet. 7/12/16, at ¶ 7-9,[2] (2) the child was not ready to be transferred into Father's custody at 3:00 p.m. on July 8, 2016, id. at ¶ 10, and (3) Mother has not ensured that the child receives Father's daily telephone call at 7:00 p.m. while the child is in Mother's care, id. at ¶ 11. Father attached a copy

_____

[2] Father does not contest Mother's authority to unilaterally enroll the child in summer camp.

- 2 -

of the Our Family Wizard entries and of various court orders from 2013, 2014, and 2015 as proof that Mother had previously been found in contempt by hearing officers for violating custody orders multiple times, including for failing to notify Father of the child's enrollment in summer camp and for not allowing Father daily telephone contact in 2015.[3] Father requested that Mother be ordered to pay him $250 in connection with his costs for filing the petition, and "any other relief the [c]ourt deems appropriate in the child's best interest and under [23 Pa.C.S. § 5323(g)]." Id. at 2.[4] Mother filed no response.

_____

[3] On the same date as Father filed his petition for a contempt hearing, Father also filed a motion to compel Mother's compliance with the custody order. Similar to the allegations in his petition, Father's motion to compel requested that Mother be compelled to adhere to the portions of the custody order requiring Mother to enter the summer camp schedule into the family calendar and to ensure that child receives Father's daily telephone call.

[4] The statute states:

> (g) Contempt for noncompliance with any custody order.—
>
> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> (i) Imprisonment for a period of not more than six months.
>
> (ii) A fine of not more than $500.
>
> (iii) Probation for a period of not more than six months.

(Footnote Continued Next Page)

The court heard argument on Father's petition for a hearing on August 26, 2016.[5] At that proceeding, Father appeared pro se, and Margaret Wei, Esq., from the Women's Center and Shelter of Greater Pittsburgh, appeared as counsel for Mother. Mother was not present. Father objected to Attorney Wei's appearance, as Mother had no counsel of record on this case. N.T., 8/26/16, at 2. Attorney Wei explained that her office has been representing Mother in both her support action and this custody action and that an attorney from the Women's Center had filed a praecipe for appearance in both actions, but the praecipe had been filed only under the support docket number. Id. at 3-4. Father noted that Attorney Wei's co-worker had previously represented Mother on the custody case and was instructed by the hearing master to enter her appearance on the custody docket, but had

(Footnote Continued) ————————————

> (iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
>
> (v) Counsel fees and costs.
>
> (2) An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

23 Pa.C.S. § 5323(g).

[5] The Local Rules of Civil Procedure for the Allegheny County Court of Common Pleas provide that motions relating to domestic relations matters are to be presented to a motions judge (after seven days' notice has been given to the opposing party), who may then order a hearing or judicial conciliation. Alleg. Cnty. C.P. Local Rule 1930(a).

never done so. Id. at 4-5. Father requested that the proceeding pause while Attorney Wei formally entered her appearance on the custody docket. Id. at 3. The court denied Father's request and proceeded with the argument. Id.[6]

In support of his petition, Father first argued that Mother failed to put the summer camp schedule into the family calendar in contravention of the requirements of the custody order. N.T. at 5-6. In response, Attorney Wei presented the court with a copy of e-mail communications between Father and Mother regarding the child's enrollment in summer camp. Id. at 6-7. Father complained that the documents were inappropriately before the court, as Mother had not filed a written response to his motion. Id. at 7.

Second, Father complained that the child was not available to receive Father's daily phone calls while in Mother's care. N.T. at 5, 7. Attorney Wei countered that Father's petition was not clear on what days phone calls were allegedly missed. Id. at 7-8. Father countered that he would present evidence of the missed calls at the contempt hearing once the court ordered it. Id. at 8.

Third, Father argued that the child was not ready for pickup at 3:00 p.m. on the days that he attended camp because the camp bus dropped the child off after 3:30 p.m., and this decreased Father's custody time. N.T. at

_____

[6] Following the hearing, at approximately 2:00 p.m. on that same day, Attorney Wei filed a praecipe for the appearance of her office on the custody docket.

8-10.[7] Again, Father stated that he would have the evidence of the specific dates and times available for the contempt hearing. Id. at 10.

The court dismissed Father's petition. N.T. at 12.[8] The written order of dismissal states: "There is no contempt. There are communications between [the] parties regarding camp and there are no specifics on the alleged contempt." Order, 8/26/16. Father filed a timely appeal, and raises the following issues:

> 1. Did the Trial Court err in denying the [Father's] Petition for a Contempt Hearing so that evidence and witness testimony could be heard regarding the [Mother's] Contempt of Court Order as it

_____

[7] Father stated,

> [Mother] would put [the child] in camp and kept him in camp and left him there. When I went to her house to pick him up, he wasn't there.
>
> . . .
>
> [F]ortunately I waited and started making phone calls, where my son is, and he came off a [camp] bus to an empty house a half hour into my custodial time. If I would have left, there was no one home.
>
> . . .
>
> And I made numerous calls to his mom and texts, and she said, he's at camp, read Our Family Wizard. So I went into Our Family Wizard and a month after she said that he was in camp, she wrote that – when are you picking [the child] up? At home or at camp?

N.T. at 8-10.

[8] The court also denied Father's motion to compel Mother's compliance with the custody order, which it had addressed simultaneously at the argument.

relates to adhering to Statue Statute/Law as it relates to 23 Pa.C.S. §5323.g and following Case Law set by the Superior Court of Pennsylvania?

2. In regards to [Mother's presence] in Court, did the Trial Court err in allowing[:]

    a) [Mother] to be absent from the hearing?

    b) an attorney who had not filed an appearance to represent [Mother]?

        i. this attorney and her colleagues have shown up to the same Trial Court under similar circumstance in several previous hearings and have all been told to file their appearance and have failed to do so.

    c) the attorney to present evidence without having filed and served [Father] with a response prior to the hearing?

3. In her bias and incompetence, did the Trial Court err when she wrote in her Order that "there are no specifics of the alleged contempt" when in fact [Father] supplied very specific information including the evidence of the contempt, items that [Father] must now incorporate in all his filings because of the Trial Court's continued efforts to squash his rights to pursue enforcement of the Custody Order it wrote under 23 Pa.C.S. §5323.g by refusing to enforce the Court Order she wrote and now denying [Father]'s right to be heard?

Father's Brief at 2-3.

## Failure to Hold Contempt Hearing

We address Father's first and third issues together. In them, Father argues that the trial court erred in denying his petition to hold Mother in contempt without holding an evidentiary hearing.

Our standard of review from an order denying a petition for civil contempt is as follows. This Court will reverse a trial court's order denying a civil contempt petition only upon a showing that

the trial court misapplied the law or exercised its discretion in a manner lacking reason.

MacDougall v. MacDougall, 49 A.3d 890, 892 (Pa. Super. 2012) (citation omitted), appeal denied, 75 A.3d 1282 (Pa. 2013).

Father asserts that there is a five-step process in a civil contempt proceeding — "(1) a rule to show cause why an attachment should not issue, (2) an answer and hearing, (3) a rule absolute (arrest), (4) a hearing on the contempt citation, and (5) an adjudication of contempt." Father's Brief at 5, 10 (citing, among other cases, Crislip v. Harshman, 365 A.2d 1260 (Pa. Super. 1976)). He claims that the trial court omitted the first four of these steps. Id. Father contends that an evidentiary hearing would have provided him an opportunity to provide evidence to support his allegations of Mother's violations. Id. at 7, 10. Overall, Father argues that the trial court denied his petition out of bias, id. at 7, and that the trial court's conduct was obstructive and diminished the court's integrity. Id. at 4.[9]

Regarding Father's petition for contempt, the trial court found the following:

> [T]his [c]ourt determined that the alleged actions, even if true, [do] not rise to the level of contempt. Mother's failure to register the child's summer camp on Our Family Wizard does not constitute willful noncompliance. It does not prevent Father from exercising his custodial rights. And it did not even have the

---

[9] In support, Father cites "Pa. §99.1" and "Pa. §33 Rule 1.2." It appears Father is attempting to cite to Pennsylvania's Code of Civility, 204 Pa. Code § 99.1, and Code of Judicial Conduct, 207 Pa. Code, Ch. 33, Rule 1.2.

effect of keeping Father in the dark, as the child readily told his Father of the camp during one of their nightly phone calls. Similarly, and given the history of this case, Father's vague allegations of occasional tardiness in terms of telephone calls and custody exchanges are not indicative of even a colorable claim of contempt.

In the past, this [c]ourt has had to warn Father that his litigious conduct toes the line of abuse of process. Indeed, Father has acted as if the [c]ourt was an appropriate forum to further harass Mother . . . . Despite Father's persistent insistence, this [c]ourt refuses to construe the Domestic Relations Code in the medieval sense.

Trial Ct. Op., 12/2/16, at 4 (footnote omitted).

We agree that Father's petition for contempt did not warrant a hearing. First, Father's contention that the five-step process outlined in Crispin governs contempt proceedings is misplaced. That process once governed contempt proceedings in support cases, but it was replaced by a streamlined procedure under Pa.R.C.P. 1910.21 in 1981, and has undergone further changes since that time. See Lowenschuss v. Lowenschuss, 470 A.2d 970, 973 (Pa. Super. 1983). The procedure for a hearing on a petition for contempt based on willful failure to follow a custody order is governed by a different Rule of Civil Procedure. See Everett v. Parker, 889 A.2d 578, 580 (Pa. Super. 2005). Rule 1915.12 dictates that "[a] petition for civil contempt shall begin with a notice and order to appear," and that the "petition shall allege the facts which constitute willful failure to comply with the custody order." Pa.R.C.P. 1915.12(a), (b). No answer to the petition is

required. Pa.R.C.P. 1915.12(d). Rule 1915.12 also allows for a hearing on the petition, but does not mandate one. See Pa.R.C.P. 1915.12(d), (e).[10]

No hearing was needed here because the alleged misconduct of Mother did not rise to the level of contempt.

> To be in contempt, a party must have violated a court order, and the complaining party must satisfy that burden by a preponderance of the evidence. Specifically, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

J.M. v. K.W., 164 A.3d 1260, 1264 (Pa. Super. 2017) (en banc) (quotation marks, brackets, and citations omitted). "[A] mere showing of noncompliance with a court order, or even misconduct, is never sufficient

---

[10] Rule 1915.12(d) and (e) states:

> (d) The petition shall be served upon the respondent by personal service or regular mail. No answer to the petition shall be required. If service is by mail, the hearing on the petition shall not be held sooner than seven days after mailing of the petition unless the court for cause shown orders an earlier hearing. If the respondent fails to appear, the court shall continue the hearing and may order personal service by the sheriff or constable, or alternative service as accepted by the court, of the petition and notice of a new hearing date, or the court may issue a bench warrant for production of the respondent in court and not for imprisonment.

> (e) After hearing, an order committing a respondent to jail for contempt of a custody order shall specify the condition which must be fulfilled to obtain release of the respondent.

Pa.R.C.P. 1915.12(d), (e).

alone to prove civil contempt." Lachat v. Hinchcliffe, 769 A.2d 481, 488 (Pa. Super. 2001).

Here, Father alleged that Mother failed to provide notice of the child's enrollment in summer camp through the Our Family Wizard program. However, the custody order states that "the failure to accurately modify the calendar is not a basis for an allegation or finding of contempt." Order at ¶ 2(c)(iii).[11] Second, Father alleged that the child was not ready for pickup at 3:00 on two Fridays, because the bus which returned the child from camp returned later than 3:00 p.m. However, Father stated on the record that the child was only one half-hour late, and that Mother had attempted to contact Father to ask whether he would be picking up the child at camp. Finally, Father alleged that Mother was not complying with the portion of the custody order providing that the child be available for daily telephone contact at 7:00 p.m. However, although averments of time are generally required to be made with specificity, Pa.R.C.P. 1019(f), Father did not specify the days the child was unavailable, impairing Mother's ability to defend the claim or to even obtain relevant phone records. On these facts,

_____

[11] Moreover, Father's petition acknowledges that he had actual notice of the child's enrollment, as the child informed him of it during a telephone call, and Father stated on the record that Mother had communicated with him about camp enrollment via Our Family Wizard a month prior to the commencement of camp. Further, Father's notice of summer camp enrollment would not have had any bearing on whether the child would attend camp while in Mother's physical custody.

we cannot conclude that the trial court abused its discretion in finding that Father's claims of contempt were either lacking in merit, de minimis in view of the contempt standard, or overly vague. We therefore affirm the trial court's denial of the petition without a hearing.

## Representation of Mother

Father contends that Mother's counsel (1) had not officially entered her appearance when she spoke on Mother's behalf (and outside of Mother's presence) at the hearing, and (2) improperly presented evidence at the hearing without having filed a verified response to Father prior to the hearing. Father apparently contends that this conduct violated Local Rule 208.3(a)(2)(c) and Pa.R.C.P. 1024. Father's Brief at 8-9.

Regarding the first point, the trial court found:

> . . . Father contends that this [c]ourt erred by allowing Mother's attorney to represent Mother at the motion without Mother being present. This is no error as this [c]ourt does not require represented litigants to be present during motions court. Father would counter that Mother's attorney should not have been permitted to represent Mother during the motion, because the attorney had not yet entered her official appearance for her client. The issue of whether the entry of appearance is necessary is moot: [an attorney from the Civil Law Project of the Women's Center and Shelter of Greater Pittsburgh] entered her appearance in October 2015, albeit on the parties' other docket [.] . . . For reasons unknown, Father has taken great umbrage with whom Mother has chosen to represent her in these proceedings. The [c]ourt does not share his standpoint. Father has never had a problem understanding exactly who was representing Mother – or, more importantly, to whom he had to serve a copy of his contempt motions.

Trial Ct. Op. at 4-5 (citations and footnotes omitted).

We agree that this issue merits no relief. "Entry of a written appearance is not mandatory." Pa.R.C.P. No. 1012(a), Note. Father acknowledges, even in his list of issues presented on appeal, that Attorney Wei and her colleagues have represented Mother in previous hearings.[12] Father presents no legal authority that would have forbade Attorney Wei's representation of Mother at the hearing, and he makes no argument explaining how he was prejudiced by the representation.

The trial court made no explicit finding regarding Father's second point (that the court accepted evidence without Mother having filed a verified response). However, upon review, we conclude that no relief is due. No responsive pleading to a petition for contempt was required by the Rules. See Pa.R.C.P. 1915.12(d). Local Rule 208.3(a)(2)(c) is inapplicable, as the governing procedure is that under Pa.R.C.P. 1915.12, and, to the extent it does not conflict, Local Rule 1930 ("Domestic Relations Matters Generally"); neither of these rules requires a response to a motion for contempt.[13] In addition, the only evidence substantiating new facts proffered by Attorney Wei at the argument was the set of electronic messages between Mother and Father regarding the child's enrollment in summer camp. Father

---

[12] We additionally note that the Women's Shelter has represented Mother on several of the previous appeals to this Court.

[13] And, as Mother points out, Local Rule 208.3(a)(2)(c), cited by Father, actually states that no response is required.

understands the language of the resulting order of the court that "[t]here are communications between [the] parties regarding camp" to mean that the court denied his petition based on these messages, but at the argument Father not only acknowledged that the child had informed him of his camp enrollment, but also that Mother had sent him messages regarding camp a month prior to its commencement. We therefore decline to find that the trial court decided Father's petition based on improper evidence. No relief is due on this issue.

For all of these reasons, we affirm the order of the trial court denying Father's petition for a contempt hearing.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/26/2017