## Milk Control Commission *v.* McAllister Dairy Farms, Appellant.

460

Argued January 6, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John Y. Scott*, with him *J. Perry Eckels*, for appellants.

*Stephen B. Narin*, Deputy Attorney General, with him *Herbert B. Cohen*, Attorney General, for Milk Control Commission, appellee.

*Willis F. Daniels*, with him *Harold W. Swope*, *Donn L. Snyder*, *E. Lowry Humes*, *Daniels*, *Swope & First* and *Humes & Kiebort*, for intervening appellees.

OPINION BY MR. JUSTICE ARNOLD, March 13, 1956:

This is an appeal from the decree of the court below, sitting in equity, which adjudged corporate defendant guilty of contempt and decreed that it pay a fine.

Plaintiff, the Milk Control Commission, filed complaint seeking to restrain defendant, who operated out of Ohio, from selling milk in Pennsylvania below minimum prices established by the Commission and also from operating without a license. Preliminary injunction was granted, and, upon hearing, was continued until further order. Thereafter all parties stipulated not to seek dissolution of the order restraining sale below minimum prices, and that such order would remain in effect until determination of the case on its merits. The corporate defendant was then granted a license by the Commission and proceeded to sell milk, subject to the injunction.

Subsequently plaintiff filed a petition for a rule to show cause why defendants should not be adjudged in contempt of court, in that they had violated the injunction by selling milk below minimum prices. Hearing thereon established the following facts:

Corporate defendant owned and operated, through a single employe, a store in Meadville which was situate approximately one-quarter mile from an individual-owned store known as "Test's filling station." Neither concern is far from the Ohio-Pennsylvania line.

A consumer's committee of Meadville arranged that Test redeem defendant's gallon jugs at 25¢ and one-half gallon jugs at 20¢, although the consumer had paid a deposit of only 5¢ per jug at defendant's store, which store would redeem them only for like amount. The jugs were then taken into Ohio and repurchased by defendant at its store in Masury at 25¢ and 20¢ respectively.

It was proved beyond reasonable doubt that the clerk in defendant's store suggested to consumer-buyers that they take the jugs to Test's for redemption because there they could obtain the higher redemption. In addition, it was established that on the milk cooler in defendant's store there was posted a newspaper article advising buyers of the procedure for obtaining the higher rebate. Defendant-McAllister, the president of the corporation, acknowledged that he was acquainted with the article.[1] Commission agents, and others, made purchases at the store, followed the procedure set forth, and thus were able to purchase milk at a cost below the established minimum prices.

The court below found as facts that this had been done, and: "9. These things which occurred at the Meadville store amounted to an invitation to purchasers to take the jugs to Test's filling station for redemption . . . 12. Through cooperative effort between the defendant's employee in its Meadville store and Test's . . . the redemption . . . amounted to rebating on the purchase price . . ., which rebate the defendant's employee had

---

[1] The article stated, inter alia: "If you're willing to juggle pennies and bottles, you can buy homogenized Vitamin D Milk one place in Crawford County at the rate of 76 cents a gallon, 33 cents a half gallon and 19 cents a quart.

"The cut-rate prices on milk are a result of a bottle deposit system in which Charles Test of Test's 24 Hour Service Station at Route 322-19-6-102 intersection is cooperating.

"As it stands now, *the system applies only on McAllister Dairy Farm milk which is sold at McAllister's store on Route 19 not far from the service station* . . . (Italics supplied).

"The State Milk Control Commission so far has not spoken out on the bottle deposit plan. The people connected with it feel that it is strictly within the law . . .

"Test buys the containers at the same prices paid by the Ohio McAllister stores and sells them for slightly more to a McAllister store at Youngstown, making a small profit which is his handling charge."

invited . . . [They] were acting in concert . . . 13. [Defendant's employe] . . . was fully authorized to act for the defendant in such matter . . ." The court thereupon held that "the guilt of [defendant corporation] . . . of criminal contempt has been established beyond a reasonable doubt."

Defendant contends, inter alia, that no criminal contempt was proved beyond a reasonable doubt. Merely to recite the foregoing facts is to establish the weakness of such contention.

That defendants have been charged with an indirect criminal contempt is without question. Nor can anyone quarrel with defendant's contention that on appeal in cases of this nature, we must "determine whether each essential fact, the finding of which was excepted to and is assigned as error, had any substantial evidence to support it, or could be fairly deduced from other proved facts" (*Commonwealth ex rel. McClintock v. Kelly*, 307 Pa. 525, 527, 161 A. 737).

The fact of the matter is that the court's findings are fully supported by the evidence. There is no foundation for defendant's argument that its clerk had no such authority to act on its behalf or that its intention to violate the order was not sufficiently established. As was stated by this Court in *Scranton City v. Peoples Coal Co.*, 274 Pa. 63, 77, 117 A. 673: "Judicial history is not wanting in instances where the spoken word was negatived by a wink or other derisive gesture, and where the man who directed the wrong was back of the firing line, others being put forward to bear the brunt of the attack, if one should be made. Indeed this is the usual situation in cases of this kind; so common has it become that the courts, like the individual citizen, naturally look below the surface to see what is there attempted to be hidden, remembering always 'that actions speak louder than words, is

464

sound law as well as proverbial wisdom.' " See also *U.S. v. United Mine Workers of America*, 330 U.S. 258. By the cleverly conceived plan of rebates through redemption the actions of the appellant were a plain and simple circumvention of the Commission regulations and of the court's order that milk be not sold below the minimum prices. To have found otherwise than the court did here would have been deliberately to close its eyes to the actual facts. Defendant's guilt was proved beyond a reasonable doubt.

Decree affirmed; costs to be paid by appellants.