Casco Products Corporation *v.* Hess Brothers,
Inc., Appellant.

Argued March 21, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Orrin E. Boyle,* for appellant.

*W. Hamlin Neely,* with him *Robert B. Doll,* for appellee.

OPINION BY RHODES, P. J., June 11, 1957:

This is a contempt proceeding. Defendant, Hess Brothers, Inc., was adjudged guilty of a civil contempt by the Court of Common Pleas of Lehigh County, sitting in equity, for violation of an injunction prohibiting the sale of products of plaintiff, Casco Products Corporation, at prices less than the minimum retail prices stipulated in plaintiff's contracts. Defendant admits that it violated the injunction; but it complains that the fine imposed is excessive, and that the court below erred in refusing to allow the introduction of certain evidence as a defense.

A complaint in equity was filed by plaintiff on August 24, 1955, in which it was alleged that defendant was offering for sale and selling at resale plaintiff's trade-marked "Casco steam irons," at less than the price stipulated by plaintiff in its fair trade contracts and price lists, in violation of the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266, §§1, 2, as amended by the Act of June 12, 1941, P. L. 128, No. 66, §1, 73 PS §§7, 8. Defendant made no answer to the complaint; on September 12, 1955, a consent decree was entered. Defendant was permanently enjoined from offering for sale or selling any irons bearing plaintiff's trade-mark, brand, or name "Casco" at prices less than

those stipulated for the same in plaintiff's fair trade contracts and price lists supplemental thereto. Defendant was permitted to close out its existing stock of "Casco" products at less than the stipulated prices; the decree further provided that the injunction was to remain in effect against defendant unless amended or vacated.

On May 3, 1956, plaintiff filed a petition alleging that defendant had violated the consent decree; a rule was granted upon defendant to show cause why it should not be held in contempt of court. Defendant, in an answer, admitted the sale of plaintiff's product in violation of the consent decree, but advanced the defense that its action was justified because plaintiff was not enforcing its fair trade prices against defendant's competitors in the same trading area. At the hearing the court below refused to admit evidence of the purported defense. Thereafter the court filed its opinion in which it made the following finding of fact: "2. That on May 10, 1956, the defendant advertised in its public display windows signs which contained this phraseology: 'Casco Steam Irons. This is what the manufacturer says we must sell them for: $15.95. Which would you rather pay? We may go to jail—but while they last Hess's price is $10.00.'" The court also found that on April 5, 1956, defendant had sold a Casco iron for $10.30, including tax, and that this iron was not one of the close-out items specifically excluded from the operation of the original injunction. Defendant was adjudged guilty of a civil contempt and fined $500. There was no provision whereby defendant could purge itself of the contempt.

Defendant's contentions on this appeal are that the contempt is an indirect criminal contempt within the scope of the Act of June 23, 1931, P. L. 925, §1, 17 PS §2047, and that the fine imposed exceeds the maxi-

mum of $100 fixed by section 2 of the Act, 17 PS §2048. An unusual aspect of the matter before us is that plaintiff agrees with defendant that the contempt with which the latter is charged is an indirect criminal contempt. However, it is plaintiff's position that the Act of 1931, 17 PS §2047, is not applicable to this case because defendant is a corporation and not a natural person.

There are three types of contempt: (1) Direct criminal contempt, (2) indirect criminal contempt, and (3) civil contempt. They differ with respect to their nature, the procedure to be followed, and the penalty which may be imposed. Direct criminal contempt is readily recognized because it occurs in the presence of the court or so near thereto as to interfere with its immediate business; and punishment may be summarily imposed. See Act of June 16, 1836, P. L. 784, §§23, 24, 17 PS §§2041, 2042. Indirect criminal contempt (Act of June 23, 1931, P. L. 925, §§1, 2, 17 PS §§2047, 2048) and civil contempt, however, are often difficult to distinguish. The misconduct giving rise to both occurs elsewhere than in the presence of the court, and consists of the violation of an order or decree of the court. For example, the violation of an injunction has been held to be a civil contempt (*Knaus v. Knaus,* 387 Pa. 370, 378, 127 A. 2d 669) and an indirect criminal contempt (*Milk Control Commission v. McAllister Dairy Farms,* 384 Pa. 459, 121 A. 2d 144). Whether the violation is a civil contempt or a criminal contempt depends upon the essential purpose of the proceeding. "The dominant purpose of a contempt proceeding determines whether it is civil or criminal. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt

complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed (1) to coerce the defendant into compliance with the court's order, and (2) in some instances to compensate the complainant for losses sustained: United States v. United Mine Workers of America, 330 U. S. 258, 303 [67 S. Ct. 677, 91 L. Ed. 884]. A judgment in a civil contempt proceeding for the benefit of a private plaintiff will, of course, incidentally vindicate the authority of the court just as on the other hand a criminal contempt judgment, which is punitive, may often advance private interests. But the test is the dominant purpose, not the incidental result: Gompers v. Bucks Stove & Range Company, 221 U. S. 418, 441 [31 S. Ct. 492, 55 L. Ed. 797]." *Knaus v. Knaus,* supra, 387 Pa. 370, 376, 127 A. 2d 669, 672.

An examination of the instant proceeding before the court below clearly indicates that the contempt was an indirect criminal contempt and not a civil contempt. The sole purpose of the proceeding was to vindicate the authority of the court; there was neither a compensatory order nor a condition provided by which defendant could purge itself of the contempt to the benefit of plaintiff. "The primary objective or purpose of punishment for civil contempt is to coerce the defendant into compliance with the decree of the court and thereby provide the remedy ordered for the benefit of the plaintiff. Every order which imposes punishment for civil contempt should state the condition which upon fulfilment will result in the release of the defendant or the remission of the fine." *Knaus v. Knaus,* supra, 387 Pa. 370, 379, 127 A. 2d 669, 673.

The Fair Trade Act of 1935, as amended by the Act of 1941, 73 PS §7, which was the basis of the violated injunction, has as its purpose the protection of the public as well as the producer of a trade-marked product. *Bristol-Myers Company v. Lit Brothers, Inc.,* 336 Pa. 81, 85, 6 A. 2d 843. While this public interest was not stressed by the court below, its presence cannot be ignored. Aside from this consideration it is apparent that throughout its opinion the court below has indicated that it was acting primarily to defend and assert its lawful authority and to impose a penalty for the violation.[1] There is no indication that the proceeding was essentially remedial for plaintiff. While it may incidentally follow that defendant will comply with the injunction to plaintiff's benefit, the dominant purpose of the contempt decree in this instance is punitive. The court below noted the defiant advertisement of defendant in disregarding the decree.[2]

As this is an indirect criminal contempt proceeding for violation of an injunction, the question arises whether the fine imposed is excessive. The Act of June 23, 1931, P. L. 925, §2, 17 PS §2048, provides a fine in such instances "not exceeding one hundred dollars." Plaintiff argues that this limitation is not applicable because the Act by its terms is operative only where a "person" is charged with the contempt. The Statutory Construction Act of May 28, 1937, P. L. 1019, §101, as amended, 46 PS §601, provides: ". . . unless the con-

---

[1] For example, the court below states: "The defendant is asking this Court to overlook the purpose of a contempt proceeding. It is not fundamentally an issue between the plaintiff and defendant but its purpose is to vindicate the authority of the Court."

[2] As to this the court below said: "It is difficult to comprehend a more obvious flouting of an order of court and we can only conclude that this was a deliberate design to challenge the authority of this Court."

text clearly indicates otherwise," . . . "(84) 'Person,' includes a corporation, partnership and association, as well as a natural person." The definition found in the Statutory Construction Act cannot directly control the issue here, as section 101, 46 PS §601, specifically provides that it is applicable only to legislation "hereafter enacted." However, it is declaratory of the interpretation given to the word "person" prior to its enactment. The word "person," as a general rule, is held to include corporations. 32 Words and Phrases, Person, p. 335. In *Bushel v. The Commonwealth Insurance Company*, 15 S. & R. 173, 177, our Supreme Court said: "When the word *person* is used in a statute, corporations as well as individuals are included." This is not without exception. "The word 'person,' when used in a statute, is ordinarily sufficiently comprehensive to include corporations, but in revenue acts they are not to be included unless such intent is clearly indicated." *Lehigh & Wilkes-Barre Coal Co. v. Riley*, 297 Pa. 522, 524, 147 A. 605, 606. See, also, *Com. v. Bailey, Banks & Biddle Company*, 20 Pa. Superior Ct. 210, 216; *Appeal of Fox*, 112 Pa. 337, 350, 4 A. 149. We are of the opinion that the Act of 1931, 17 PS §2047, is applicable to corporations as well as natural persons. It is comprehensive legislation on the subject of indirect criminal contempt for violation of an injunction or restraining order, and it does not appear from the context that the Legislature intended to exclude corporations.[3] See *Penn Anthracite Mining*

---

[3] Section 2 of the Act of June 23, 1931, P. L. 925, 17 PS §2048, provides: "Punishment for a contempt specified in section one may be by fine not exceeding one hundred dollars, or by imprisonment not exceeding fifteen days in the jail of the county where the court is sitting, or both, in the discretion of the court."

"However, the fact that the penalty provided for the violation of a statute is a fine or imprisonment, or both, in the discre-

*Co. v. Anthracite Miners of Pennsylvania,* 318 Pa. 401, 409, 411, 178 A. 291. The fine of $500 for the single act of contempt found by the court below is therefore excessive. Plaintiff cites *Milk Control Commission v. McAllister Dairy Farms,* supra, 384 Pa. 459, 121 A. 2d 144, as indicating the inapplicability of the limitation of the Act of 1931 to corporate defendants. That case neither holds nor infers the proposition advanced. There a corporate defendant was adjudged guilty of indirect criminal contempt for violation of an injunction; and apparently a fine of $2,000 was imposed by the court and affirmed by the Supreme Court. However, the possible excessiveness of the fine was not an issue in the case; and it further appears that there were a number of violations each of which would be a contempt and thus the basis for a separate fine. See *Milk Control Commission v. McAllister Dairy Farms,* supra, 384 Pa. 459, 462, 121 A. 2d 144. In the instant case only one violation is involved.

Defendant's other contention is that the court erred in refusing to allow it to place in evidence the defense that plaintiff was not enforcing its fair trade prices against defendant's competitors. We cannot agree that this was error. The fact that plaintiff may not have been enforcing its fair trade prices with respect to other retailers would be no defense to this indirect criminal contempt proceeding.[4] The contempt was deliberate

tion of the court, does not render it inapplicable to a corporation, and the same rule applies where the statute creating the offense provides for imprisonment if the fine imposed is not paid." 13 Am. Jur., Corporations, §1137, p. 1061. See *United States v. Union Supply Co.,* 215 U. S. 50, 30 S. Ct. 15, 54 L. Ed. 87, 88; and Annotation, 33 A.L.R. 1211.

[4] Cf. *Bulova Watch Co., Inc. v. Hess Brothers, Inc.,* Court of Common Pleas of Lehigh County, No. 16, January Term, 1955, opinion by President Judge HENNINGER, filed November 19, 1956, 27 Lehigh Law Journal 217.

and obvious as defendant's advertising establishes; and the purpose of the present proceeding was punitive. If this had been a civil contempt proceeding for the primary benefit of plaintiff, it might have been proper to introduce this evidence in defense. See Act of June 5, 1935, P. L. 266, §2, as amended, 73 PS §8. But it is unrelated to the criminal contempt. Moreover, the injunction which was violated provided that it was to remain in effect until modified or vacated. When defendant became aware of facts indicating that competitors were continuing to sell plaintiff's products below the fair trade prices, defendant wrote to plaintiff stating that, unless plaintiff actively enforced the prices with uniformity, defendant would petition the court for vacation of the decree. Defendant eventually took such action. It is obvious that defendant clearly understood the injunction and its significance as well as the proper and available legal remedies for relief, which it failed to pursue in a timely manner. The violation is clear beyond a reasonable doubt. The fine is excessive although the conviction is proper.

The decree of the court below is modified to the extent that it imposes a fine in excess of $100; as modified it is affirmed. Each party shall pay its own costs.