366 A.2d 293
The PHOENIX GLASS COMPANY

v.

LOCAL UNION NO. 8381, UNITED STEEL WORKERS OF
AMERICA, DISTRICT 20, Theresa Jean DeVincentis,
President, et al.
Appeal of Dwayne COOPER.

Superior Court of Pennsylvania.
Argued Nov. 24, 1975.
Decided Nov. 22, 1976.

Thomas H. M. Hough, Pittsburgh, for appellant.

Nich Francalancia, Beaver, for appellee.

Before WATKINS, President Judge, and JACOBS,
HOFFMAN, CERCONE, PRICE, VAN der VOORT and
SPAETH, JJ.

VAN der VOORT, Judge:

On April 25, 1975, appellant Dwayne Cooper was adjudged in contempt by the Court of Common Pleas of

Beaver County when he wilfully violated the clear terms of an injunction by preventing a truck from entering a plant. He was ordered to pay costs and a fine of one hundred ($100) dollars and to stand committed to the custody of the sheriff until the fine and costs should be paid. Appellant paid the fine, receipt of which was noted April 25, 1975 by the Prothonotary on the back of the lower court's order. On May 1, 1975, appellant took this appeal to our court. We find that appellant's payment of the fine ended the matter and precludes him from subsequently appealing the judgment of contempt. The appeal is therefore quashed. *Reap's Appeal,* 88 Pa.Super. 147 (1926).

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

HOFFMAN, Judge (dissenting):

This appeal presents the question whether a contemnor must be informed of the nature of the proceedings at the beginning of a contempt hearing.

On April 2, 1975, the Phoenix Glass Company filed a civil action in equity seeking to restrain acts of unlawful picketing by District 20 of the United Steelworkers of America, Local Union No. 8381, pursuant to the Act of 1937, P.L. 1198, § 4, 1939, June 9, P.L. 302, § 1, 43 P.S. § 206d. The court held a hearing that same day with all parties present, including the appellant, Dwayne Cooper, who was the union's staff representative. On April 3, 1975, the court issued an order enjoining the defendant union from interfering with ingress and egress of vehicles and persons at entrances to appellee's plant, limiting the number of pickets to six persons spaced not less than 18 feet apart, and enjoining the appellee from interfering with otherwise lawful picketing.

On April 16, 1975, appellant stopped a truck entering appellee's plant. One of appellee's employees attempted to take a picture of appellant while he was standing in front of the truck. As the photographer started to return to the plant, he was accosted by appellant, and a struggle ensued. The camera was destroyed. As a result of this incident, the appellee petitioned the court on April 21, 1975, to order appellant to appear and show cause why he should not be adjudged guilty of contempt for violation of the order of April 2, 1975 (filed April 3, 1975). The court set a hearing for April 25, 1975. At the opening of the hearing, the appellant objected to the proceedings on two grounds. First, he contended that because he was not a named defendant in the initial action and because he was not personally served with the order, he could not be held in contempt. Second, appellant objected to the proceedings, because he was not informed whether he was being tried for civil or criminal contempt. In response to appellant's first objection, the court apparently concluded that service on the union's counsel was sufficient.[1] Appellant's second objection was not addressed. At the conclusion of the hearing, the court found appellant in contempt, fined him $100.00 and ordered that he be committed until payment of the fine. Appellant paid the fine, and this appeal followed.

## I  *Mootness*

The Majority holds that because appellant has paid his fine, he has purged himself of contempt, and the appeal

[1]. The court's conclusion was proper. Appellant does not dispute that the union's attorney was served, that appellant was present throughout the hearing on the preliminary injunction, and that he is an official of Local No. 8381. Rule 1517, Pa.R.C.P., allows notification of the filing of the decree by service upon the attorney representing the parties. Furthermore, it is well settled that, if the contemnor has actual knowledge of the decree, he may be held to account for defiance of the court's order. *East Caln Township v. Carter*, 440 Pa. 607, 269 A.2d 703 (1970); *Brocker v. Brocker*, 429 Pa. 513, 241 A.2d 336 (1968).

is, therefore, moot. Citing *Reap's Appeal*, 88 Pa.Super. 147 (1926). I believe however, that the question of mootness must be determined under the test enunciated in *Altemose Construction Company v. Building and Trades Council of Philadelphia*, 449 Pa. 194, 215–16, 296 A.2d 504, 516 (1972):

"At the threshold of these appeals we are met by appellees' argument that the appellants have purged themselves of contempt and that the appeals must therefore be dismissed as moot. Reliance is placed upon the decision in *Reap's Appeal*, 88 Pa.Super. 147 (1926) where one adjudged in contempt of court and fined was held to have no right of appeal after paying the fine and purging himself of the contempt. See also *Com. ex rel. Wilhelm v. Weigley*, 83 Pa.Super. 189 (1924). The appellant in *Reap's Appeal* contended, as did these appellants at oral argument, that the payment was not voluntary, but made under unlawful duress of his person or property. The Superior Court in *Reap* held that the duress argument could prevail only where there had been 'usurpation of power not conferred, not through the irregular exercise of a jurisdiction possessed' 88 Pa.Super. at 150. See *Cunningham v. Mitchell*, 67 Pa. 78 (1870). There is no doubt that the court below was possessed of both personal and subject-matter jurisdiction, and there was certainly no intentional 'usurpation of a power not conferred'. We have concluded, however, that the irregularities which characterized the proceeding were sufficiently serious so that the case is analogous to one where there is no power to act. . . . So here, if the fines for contempt were under the circumstances beyond the authority of the court to impose, their payment must be considered as having been made under duress, to avoid imprisonment at least over night, and not with the intention of purging the payors of contempt. Since, as will appear, we find that appellants were not afforded their due process rights, the court was acting without authority in im-

posing fines.  This is more than a mere 'irregular exercise' of jurisdiction;. it goes to the core of the validity of the contempt proceeding." Thus, if the proceedings below offend due process, a contemnor retains his right to appeal the contempt even though he pays a fine, provided the fine is paid simply to avoid commitment.  In the instant case, the order of the lower court adjudging appellant in contempt leaves no doubt that appellant paid his fine under duress and not from a desire to purge the contempt.

## II  *Deprivation of Due Process*

Our courts have often been required to distinguish the types of contempts, and we have held: "There are three types of contempt:  (1) Direct criminal contempt, (2) indirect criminal contempt, and (3) civil contempt.  They differ with respect to their nature, the procedure to be followed, and the penalty which may be imposed.  Direct criminal contempt is readily recognized because it occurs in the presence of the court or so near thereto as to interfere with its immediate business; and punishment may be summarily imposed.  See Act of June 16, 1836, P.L. 784, §§ 23, 24, 17 P.S. §§ 2041, 2042.  Indirect criminal contempt (Act of June 23, 1931, P.L. 925, §§ 1, 2, 17 P.S. §§ 2047, 2048) and civil contempt, however, are often difficult to distinguish.  The misconduct giving rise to both occurs elsewhere than in the presence of the court, and consists of the violation of an order or decree of the court.  For example, the violation of an injunction has been held to be a civil contempt (*Knaus v. Knaus,* 387 Pa. 370, 378, 127 A.2d 669) and an indirect criminal contempt (*Milk Control Commission v. McAllister Dairy Farms, Inc.,* 384 Pa. 459, 121 A.2d 144)." *Casco Products Company v. Hess Bros.,* 184 Pa.Super. 47, 51, 132 A.2d 922, 924 (1957).  See also *Riccobene Appeal,* 439 Pa. 404, 424, 268 A.2d 104, 115 (1970).

"*The dominant purpose* and objective of the Court's Order is the *controlling* factor in the determination of whether the contempt was civil or criminal." *Brocker v. Brocker*, 429 Pa. 513, 519, 241 A.2d 336, 338 (1968). "If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed (1) to coerce the defendant into compliance with the court's order, and (2) in some instances to compensate the complainant for losses sustained: *United States v. United Mine Workers of America*, 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884. A judgment in a civil contempt proceeding for the benefit of a private plaintiff will, of course, incidentally vindicate the authority of the court just as on the other hand a criminal contempt judgment, which is punitive, may often advance private interests. But the test is the dominant purpose, not the incidental result: *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797." *Knaus v. Knaus*, 387 Pa. 370, 376, 127 A.2d 669, 672 (1956). See also *Brocker v. Brocker*, supra; *Philadelphia Marine Trade Association v. International Longshoremen's Association*, 392 Pa. 500, 140 A.2d 814 (1958).

Our Supreme Court established certain tests to assist in determining the "dominant purpose" of a contempt proceeding in *Knaus v. Knaus*, supra 387 Pa. at 378, 127 A.2d at 673: "The factors generally said to point to a civil contempt are these: (1) Where the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original injunction action and filed as a continuation

thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion." See also, *Crislip v. Harshman*, 243 Pa.Super. 349, 365 A.2d 1260 (1976).

In addition to the presence or absence of the indicia of "dominant purpose", civil and criminal contempts are distinguishable procedurally. As previously stated, direct criminal contempt may be punished by the court summarily under the Act of June 16, 1836, P.L. 784, § 23. See *Levine Contempt Case*, 372 Pa. 612, 95 A.2d 222 (1953); *Snyder's Case*, 301 Pa. 276, 152 A. 33 (1930). The procedural safeguards required in cases of indirect criminal contempt are set forth in the Act of June 23, 1931, P.L. 925, 17 P.S. §§ 2047, 2048, and include: the right to bail, the right to be notified of the accusation and a reasonable time to make a defense, the right to a speedy, public trial by jury if demanded, and the right to demand the retirement of the judge under certain circumstances.[2] See *Altemose Construction Company v. Building and Trades Council of Philadelphia,* supra; *Philadelphia Marine Trade Association v. International Longshoremen's Association,* supra; *Casco Products Company v. Hess Bros.,* supra. By contrast, the procedural requirements in a civil contempt case involve several steps: "rule to show cause why an attachment should not issue, answer and hearing, rule absolute (arrest), hearing on the con-

---

**2.** But see *Marco Industries, Inc. v. United Steelworkers of America,* 401 Pa. 299, 164 A.2d 205 (1960), in which the appellant sought to establish the right of a contemnor to a preliminary hearing. The court held that the procedural rights of a person held for indirect criminal contempt are limited to those enumerated in the Act of 1931.

tempt citation [and] adjudication of contempt". *Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 6, 253 A.2d 263, 266 (1969). See also *Altemose Construction Company v. Building and Trades Council of Philadelphia*, supra; *Marco Industries, Inc. v. United Steelworkers of America*, 401 Pa. 299, 164 A.2d 205 (1960).

The objectives and procedures which differentiate the three kinds of contempts are reflected in the distinctive punitive features of each. If the contempt is criminal, the court may impose a fine and/or imprisonment. Under the Act of 1931, the punishment for indirect criminal contempt is limited to a maximum fine of $100, or imprisonment for 15 days, or both. By contrast, "[t]he primary objective or purpose of punishment for civil contempt is to coerce the defendant into compliance with the decree of the court and thereby provide the remedy ordered for the benefit of the plaintiff. Every order which imposes punishment for civil contempt should state the condition which upon fulfilment will result in the release of the defendant or the remission of the fine." *Knaus v. Knaus*, supra 387 Pa. at 379, 127 A.2d at 673. "If imprisoned, as aptly said in *In re Nevitt*, 8 Cir., 117 F. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do." *Knaus v. Knaus*, supra at 379, 127 A.2d at 673, quoting *Gompers v. Bucks Stove and Range Company*, 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1911). In addition to coercing the defendant into compliance with the court's order, punishment in civil contempt may also take the form of damages to the plaintiff to compensate the complainant for losses. *Brocker v. Brocker*, supra; *Knaus v. Knaus*, supra. Thus a "fine" may either be payable to the complainant as damages or may be paid to the court with remission to the defendant conditioned on compliance with the court's order. *Brocker v. Brocker*, supra. An unconditional fine, however, payable to the

court is not appropriate in civil contempt, but is rather the hallmark of *criminal* contempt.[3]

In the instant case, aspects of both indirect criminal contempt and civil contempt were present. Applying the tests enunciated in *Knaus*, it would appear that the "dominant purpose" of the contempt proceedings was the protection of private rights: the complainant was a private individual, the proceeding was encaptioned with the original injunction action and was a continuation thereof as opposed to a separate and independent action, and the relief requested was primarily for the benefit of the appellee, a private party. Although the defendant's conduct could have been characterized as criminal, it was not so contumelious that the court would be "impelled to act on its own motion". Thus, the "dominant purpose" would probably indicate a civil rather than criminal contempt proceeding. The procedural aspects of the hearing below did not conform to either those mandated for civil contempt, *Commonwealth ex rel. Magaziner v. Magaziner*, supra, or those required for criminal contempt under the Act of 1931. The penalty, however, was clearly an unconditional fine. Thus, it would appear that appellant was found guilty of an indirect criminal contempt.

The issue, then, is whether the court below may properly proceed against a contemnor without informing him of the potential criminal nature of the proceedings. "That the procedures and purposes and punishments are

3. In addition to punishing past acts of misbehavior by way of indirect criminal contempt, a court may punish past acts by imposing an unconditional compensatory fine and/or conditional imprisonment: "The opinions and decisions of the Supreme Court of the United States make it clear that a Court can, for *past* acts of misbehavior amounting to *civil* contempt, impose an unconditional compensatory fine and/or a conditional imprisonment: *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884; *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599; *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797; also *Parker v. U. S.*, 1 Cir., 126 F.2d 370." *Philadelphia Marine Trade Association v. International Longshoremen's Association*, 392 Pa. 500, 517, 140 A.2d 814, 823 (1958) (Concurring Opinion by Bell, J.).

distinguishable does not mean that the same set of facts cannot give rise to more than one type of contempt. . . . But this is not to say that the procedures appurtenant to each specific type of contempt may be so commingled as to take from a party the rights which it is by law entitled to enjoy . . .." *Philadelphia Marine Trade Association v. International Longshoremen's Association,* supra 392 Pa. at 512, 140 A.2d at 820. Justice ROBERTS, concurring in *Brocker v. Brocker,* supra 429 Pa. at 527, 241 A.2d at 343, said: "Fundamental to the concept of due process is the notion that the law should never be permitted to direct its punitive force against a man unless that man is first given an opportunity to defend himself. To insure that his opportunity be not lost as a whisper in a windstorm, the law has created strict and often formal procedures whereby a potential defendant is notified of each proceeding at which his rights may be affected. . . ." I would hold that a fundamental element of such notification is the right to be informed of the *potential criminal nature* of the proceedings in sufficient time for the alleged contemnor to exercise his rights under the Act of 1931.[4] Cf. *Morrissey v. Brewer,* 408 U.S. 471, 487–488,

4. In *Altemose Construction Co. v. Building and Trades Council of Philadelphia,* supra, the Court held that, although it could not determine whether the appellant had been found guilty of civil or criminal contempt it would have to reverse the lower court because the procedural safeguards of neither criminal nor civil contempt were afforded appellant. In *Knaus v. Knaus,* supra, the Court held "Although the procedural indicia of civil contempt are unquestionably present in this case, even if it be assumed arguendo that appellant was committed for an indirect criminal contempt, his sentence would have to be reversed because the record before us fails to show that the procedural protection given by the Act of 1931, supra, was afforded the appellant. . . ." 387 Pa. at 380, 127 A.2d at 674. In *Philadelphia Marine Trade Association v. International Longshoremen's Association,* supra, the Court held that, because appellants were not afforded the protections of the law to which they were entitled if being punished for criminal contempt and were not provided the right to be released if punished for civil contempt, the order of the lower court imposing a fine for contempt must be reversed. See also *Casco Products Company v. Hess Bros.,* supra.

92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962). Absent notification of the potential criminal nature of the contempt proceedings, there is a substantial risk that the contemnor will suffer an unintentional waiver of his right under the Act of 1931 to a jury trial.

Because the court below refused to inform appellant of the potential criminal nature of the proceedings, I would hold that it was improper to sentence appellant for criminal contempt. I would, therefore, reverse appellant's conviction for indirect criminal contempt and remand the case for proceedings consistent with this opinion.

SPAETH, J., joins in this dissenting opinion.