547 A.2d 399

**William J. FOX, Appellee,**

v.

**Frank K. GABLER, Appellant.**

Superior Court of Pennsylvania.

Argued March 8, 1988.

Filed Sept. 9, 1988.

342

Bruce L. Thall, Philadelphia, for appellant.

Lizabeth A. Auspitz, Ambler, for appellee.

Before ROWLEY, WIEAND and MONTEMURO, JJ.

MONTEMURO, Judge:

This appeal was taken by Frank K. Gabler from an order which found him in contempt and directed that he post bond in the amount of ten thousand ($10,000.00) dollars or face incarceration. Gabler has now posted the required bond and proceedings are continuing in the trial court. For the reasons that follow, we quash Gabler's appeal.

The present appeal results from the culmination of a series of events which began almost fourteen years ago in October of 1974, when appellee, William J. Fox, filed a complaint in equity alleging that he and appellant, Frank K. Gabler, had entered into a partnership agreement for the purpose of purchasing a tap room and restaurant known as the "Toll House Inn". Alleging that he had been wrongfully excluded from the partnership, Fox's complaint requested that he be determined an equal partner in the "Toll House Inn" and also that Gabler be required to account for all earnings, expenses and profits of the "Toll House Inn". Fox sought to commence discovery; however, Gabler refused to comply with numerous discovery requests and court orders compelling discovery. As a result, default judgment was entered against Gabler, which the trial court subsequently refused to strike. On appeal, we reversed and struck the judgment because of a procedural irregularity in the prothonotary's entry of judgment. *See Fox v. Gabler*, 282 Pa.Super. 490, 423 A.2d 351 (1980). On remand, Fox attempted to complete discovery but was again met with stonewalling tactics by Gabler. Fox moved for sanctions pursuant to Pa.R.C.P. 4019. Upon consideration of this motion, the trial court determined that default judgment was an appropriate sanction and again entered default judgment against Gabler. On appeal, we affirmed the

entry of default judgment. *See Fox v. Gabler*, 335 Pa.Super. 638, 484 A.2d 815 (1984).

The case was then listed for a hearing pursuant to Pa.R.C.P. 1511(b) on October 6, 1986 to assist the court in framing a decree, but due to various delays, the hearing was not held until November 17, 1986. On that date, Gabler appeared and requested a continuance so that he could employ counsel. The court denied this motion and the case proceeded. On November 19, 1986, Gabler experienced chest pains and was taken to the emergency room at Montgomery Hospital. When he appeared in court later that same day, the court entered an order prohibiting Gabler from removing any partnership assets from the business premises. The order also directed Gabler to furnish various documents and to prepare a list of all partnership assets. Upon discovering that Gabler had removed various items of personalty from the business premises, Fox filed a petition for contempt alleging that Gabler had violated the court's order. A hearing date was set on the petition for November 24, 1986. When Gabler failed to appear at the hearing, the trial court, believing that this was just another delay tactic on the part of Gabler, conducted the contempt proceedings without Gabler present. By order dated November 24, 1986, the trial court found Gabler in contempt of its previous order, but demonstrating remarkable judicial patience, imposed no sanctions at that time. Instead the court reinstated its previous order and directed that Gabler could purge himself of his contemptuous conduct by returning the items which had been removed from the business premises.[1] Gabler continued to flagrantly disregard the trial court's order and refused to return the property. Consequently, the court scheduled a hearing on March 20, 1987, to determine whether Gabler continued to be in contempt of its prior order. Following that hearing, the court found that Gabler had failed to purge himself of his contemptuous conduct, and required him to post a bond of ten thousand dollars ($10,000.00) or face incarceration. This

[1]. An appeal from this order was quashed on February 26, 1987.

timely appeal followed and on April 6, 1987 Gabler posted the required bond.

## Part I

Initially, we must address Fox's contention that this appeal should be quashed due to Gabler's repeated flagrant contempt of several orders entered by the trial court. Our review of the record and case law reveals there is factual as well as legal support for the argument which Fox advances. *See Commonwealth ex rel. Goodwin v. Goodwin*, 413 Pa. 548, 555, 198 A.2d 503, 504–505 (1964); *Commonwealth ex rel. Beemer v. Beemer*, 200 Pa.Super. 103, 106–107, 188 A.2d 475, 477 (1962). However, in addition to his continuous blatant and contumacious disregard of court orders, we find several other reasons which dictate that we quash the present appeal.

## Part II

While Gabler strenuously urges that we reach the merits of his claim, a review of the merits is virtually impossible because of his failure to supply this Court with an adequate record. It is the duty of the appellant to provide a record which is sufficient to permit meaningful appellate review. We have held that where the appellant is remiss in fulfilling this duty, the appeal must be quashed. *See Commonwealth v. Williams*, 357 Pa.Super. 462, 516 A.2d 352 (1986). In the present case, without a full transcript of the November 24, 1986 contempt hearing and without the photographs allegedly showing the condition of the Inn after various items had been removed therefrom, meaningful appellate review of this case would be extremely difficult, if not impossible.

## Part III

We also believe that the case of *Cedar Valley Civic Association v. Schnable*, 239 Pa.Super. 486, 362 A.2d 993 (1976) is factually indistinguishable from the case at bar and dictates that we quash Gabler's appeal. In *Cedar Valley*, the trial court had found the defendant in civil contempt of its order and had ordered that he be committed

to prison. The incarceration, however, was stayed in order to permit the defendant to post a bond in the amount of five thousand ($5,000.00) dollars to ensure compliance with the courts order. Defendant filed a notice of appeal from the contempt order, but subsequently posted the bond which the court had required. Under these circumstances, we held that the order was interlocutory and, therefore, refused to decide the appeal. Because the facts of the present case cannot be distinguished from the *Cedar Valley* case, the present appeal must also be quashed. Cf. *Phoenix Glass Co. v. Local 8381, United Steel Workers of America*, 244 Pa.Super. 16, 366 A.2d 293 (1976) (payment of contempt fine ends matter and precludes subsequent appeal).

## Part IV

■ While we find the *Cedar Valley* case to be dispositive of the present case, we note that the reasons behind our finding that the order was interlocutory in that case are not entirely clear. Because of the sometimes inconsistent analyses employed in determining what constitutes a final order, we feel that some comments on the final order doctrine are appropriate. In addition, we take this opportunity to set forth what we believe to be a logical analysis that should be employed in cases such as this where the order in question is one that is completely collateral to the underlying litigation, and where the underlying litigation will continue after appeal of the order has been resolved. As a general rule, we believe that such orders should not be considered final for purposes of appeal until the entire litigation between the parties in the trial court has been terminated. Such a rule would foster uniformity and predictability in the law with respect to appealable orders as well as this Commonwealth's oft-stated policy against piecemeal appeals. In addition, the federal courts have adopted and adhered to this policy without substantial difficulty.

■ Under this analysis we conclude that the March 20, 1987 order requiring appellant to pay $10,000 or face incar-

ceration did not constitute a final order.  Nor did the order constitute an exception to the general rule that this Court will consider only final orders from the trial courts.  Consequently, we find that this court is without subject matter jurisdiction and quash Gabler's appeal for this reason as well as for the reasons espoused in parts I, II and III of our discussion.

The law is well-settled that an appeal "as of right" will lie only from a final order unless otherwise permitted by statute or rule.  *See* 42 Pa.C.S.A. §§ 5105, 702(a); *See also* Pa.R.A.P. 311, 312 and 341(a); *White v. Southeastern Pennsylvania Transportation Authority,* 366 Pa.Super. 16, 530 A.2d 870 (1987).  In the absence of a final order or an interlocutory order appealable "as of right", an appeal from an interlocutory order may be taken only by permission, so long as specific prerequisites are met.  42 Pa.C.S.A. § 702(b); Pa.R.A.P. 312, 1311.  In determining whether a particular order constitutes a final order, our supreme court has stated:

> We have variously defined a final order as one which ends the litigation, or alternatively disposes of the entire case.  Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant 'out of court'.  In *Marino Estate,* 440 Pa. 493, 494, 269 A.2d 645, 646 (1969), we said that an order is not interlocutory if it precludes a party from presenting the merits of his claim to the lower court.

*T.C.R. Realty, Inc. v. Cox,* 472 Pa. 331, 337, 372 A.2d 721, 724 (1977) (citations omitted); *see also Bracken v. Bracken,* 294 Pa.Super. 371, 439 A.2d 1247 (1982).  One commentator has concisely set forth the policy considerations behind the general rule that an appeal is authorized only when the lower court disposes of the entire case as follows:

> One might ask what is the rationale for such an arbitrary rule of thumb.  The reasons are many, varied and sensible.  The final order doctrine is a compound of legal requirement, policy, fairness and efficiency.  Of paramount importance is the fact that most of the jurisdiction-

al statutes invest the courts with jurisdiction (political, judicial power) only over 'final orders' of the lower courts. The doctrine also represents a prudential standard by which to best allocate and maximize judicial resources. The process of lower court litigation, for example, involves a sequential, on-going process of multiple decision-making. If an appellate court were to open its doors to every person aggrieved by a decision that occurred in the course of litigation, the appellate courts—financed by the citizenry—would be quickly overwhelmed and become bankrupt. Aside from avoiding the potentially debilitating effects upon the judiciary of a carte blanche rule of access to the appellate courts, the final order doctrine offers fairness and a comforting assurance to the litigants. The rule attempts to reasonably assure that the parties will economically have their 'day in court' and that the risks of expensive, piecemeal, and perhaps strategically dilatory appeals will be avoided.

Pines, Pennsylvania Appellate Practice: Procedural Requirements and the Vagaries of Jurisdiction (Part I), 91 Dick.L.Rev. 55, 80 (1986).

Other than obtaining permissive review of an order, 42 Pa.C.S.A. § 702(b), Pa.R.A.P. 312, 1311(b), there is one exception to the general rule that only final orders are appealable. That exception is the collateral order doctrine. The collateral order doctrine expands the traditional concepts of finality to permit an appeal of an interlocutory decision regarding an important right which is purely collateral to the main action. The collateral order doctrine was originally enunciated by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Pennsylvania adopted the concept in *Bell v. Beneficial Consumer Discount Company*, 465 Pa. 225, 348 A.2d 734 (1975), and recently reaffirmed its vitality in *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985):

In *Cohen*, the Supreme Court of the United States carved out an exception to the final judgment rule for situations

where postponement of appeal until after final judgment might result in irreparable loss of the right asserted. Under *Cohen,* an order is considered final and appealable if *(1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. Id.* 337 U.S. at 546, 59 S.Ct. at 1226, 93 L.Ed. at 536.

*Id.* at 94. 501 A.2d at 214, *quoting Pugar v. Greco,* 483 Pa. 68, 73, 394 A.2d 542, 545 (1978) (emphasis added).

The order appealed from in the present case required appellant to post $10,000 or face imprisonment following his citation for civil contempt. The contempt citation imposed upon appellant was for civil rather than criminal contempt because the dominant purpose of the contempt citation was to coerce compliance with the previous orders of the trial court. *See Rulli v. Dunn,* 337 Pa.Super. 613, 487 A.2d 430 (1985). Only after demonstrating an extraordinary amount of patience did the court pose an ultimatum to appellant in order to compel obedience and afford relief to appellee. It is clear that the March 20, 1987 order is not archetypical of an order which ends the litigation or disposes of the entire case. Both parties are still in court and the pending action, seeking an accounting and division of the partnership assets, must be litigated further. Moreover, we do not believe that the present order is appealable under the narrow exception to the final order rule set forth in *Cohen.* While the order requiring appellant to pay $10,000 or be incarcerated is collateral to the main action, there is no compelling reason why it should be reviewed prior to final judgment in the principal action. Appellant's $10,000 will not be irreparably lost if we refuse an interim review of the order. Rather, the main action can proceed to final judgment after more than fourteen (14) years of delay, and the order, as well as the final accounting, may be reviewed in one appeal. *See McManus v. Chubb Group of Insurance Companies,* 342 Pa.Super. 405, 493 A.2d 84 (1985) (in the absence of

unusual circumstances, we will not review such orders prior to final judgment in the main action); *See also Cedar Valley Civic Association, supra* (order finding contempt for failure to abide by court's prior order and imposing sanctions found not appealable). *Cf. Fenstamaker v. Fenstamaker,* 337 Pa. 410, 487 A.2d 11 (1985). In the present case, which has been delayed for nearly fourteen years because of appellant's dilatory tactics and intentional disregard of court orders, we find the words of Judge Wickersham in *Hall v. Lee,* 285 Pa.Super. 542, 428 A.2d 178 (1981), particularly enlightening:

> (I)f this order were to be found to be presently appealable, it would tend to discourage the (trial) court's use of the disciplinary tool, and it would merely become another weapon in the arsenal of dilatory practice for the attorney who wished to delay the judicial proceedings.

*Id.*, 285 Pa.Superior Ct. at 548, 428 A.2d at 181.

The law in this Commonwealth with respect to finality is replete with inconsistencies and traps for the unwary party. As a result, the practicing attorney is frequently placed on the horns of a dilemma. He must either immediately appeal an order entered by the trial court and risk the possibility that the appeal will be found premature, in which case valuable time and money will have been wasted, or, he may decide to forgo an immediate appeal and risk waiver of claims regarding the order, exposing himself to a possible malpractice action by his client. Several members of this Court have recognized the need for reform and reevaluation in this area in order to develop a rule which will lead to greater predictability of results, and, at the same time, discourage piecemeal appeals. *See Grim v. Betz,* 372 Pa. Super. 614, 539 A.2d 1365 (1988) (Beck, J., concurring); *Danko Development Corporation v. Econocast Corporation,* 369 Pa.Super. 120, 534 A.2d 1108 (1987). The present case provides a classic illustration of the inequitable results that can often occur because of the absence of a definitive analytical framework from which we may evaluate, with

some degree of consistency, whether a particular order is reviewable.

The general rule in this Commonwealth is that a "contempt order imposing sanctions is final and appealable when entered...." *Fenstamaker v. Fenstamaker, supra* at 418, 487 A.2d at 15; *College Watercolor Group v. William H. Newbauer, Inc.*, 468 Pa. 103, 360 A.2d 200 (1976); *Joseph Horne Company v. Operating Engineers, Local Union No. 95–95A*, 250 Pa.Super. 145, 378 A.2d 868 (1977). Conversely, "until sanctions or imprisonment is imposed, an order declaring a party in contempt is interlocutory." *Rulli v. Dunn, supra*, 337 Pa.Superior Ct. at 616, 487 A.2d at 431; *Hester v. Bagnato*, 292 Pa.Super. 322, 323, 437 A.2d 66, 67 (1981). However, when sanctions are imposed for failure to comply with a discovery order the order imposing sanctions is not reviewable until final disposition of the underlying litigation. *See Joyce v. Pivirotto*, 358 Pa.Super. 50, 516 A.2d 763 (1986); *Edney v. Southeastern Pennsylvania Transportation Authority*, 356 Pa.Super. 160, 514 A.2d 194 (1986). This is so even though discovery sanctions are frequently imposed following a citation for civil contempt in an attempt to coerce compliance with the discovery order.

A careful examination of the trial court's order in this case reveals that the order to pay $10,000 or undergo imprisonment embodies both an element of sanction and an element of security. On the one hand the order was clearly intended to punish Gabler for his conduct. However, it is equally as clear that the $10,000 payment was intended to compensate Fox for the costs incurred in enforcing the order. Because of the lack of a consistent test to be employed where we are concerned with an order which is completely collateral to the underlying litigation, the question of finality in a case such as this becomes largely a matter of semantics. If the order in question is termed a sanction for contempt, then under one line of cases the order would be deemed final. *See Fenstamaker, supra.* If, on the other hand, the order were determined to be a "bond" or "security" or a "discovery sanction" or "costs for

contempt proceedings", then the order would be interlocutory. *See, e.g., Markey v. Marino*, 361 Pa.Super. 92, 521 A.2d 942 (1987). The unjustness of such an *ad hoc* determination of the question of appealability is readily apparent. Mere semantics should not be permitted to transform an order which is technically unappealable into one requiring appellate review.

In *McManus, supra*, the plaintiff consistently refused to comply with a court order directing her to produce an insurance policy. The court held the plaintiff in contempt for failing to comply with its order and directed appellant to pay the costs of the motion for contempt, as well as prior assessments of costs. The order further stated that if these costs were not paid within 21 days, the plaintiff's action would be dismissed with prejudice. The plaintiff appealed before the expiration of the 21 day period and we quashed her appeal. In refusing to review the trial court's order, the court applied the collateral order doctrine enunciated in *Cohen* and reasoned as follows:

> An order awarding the expenses involved in presenting a motion for sanctions is collateral to the main action. However, there is no good reason why it should be reviewed before final judgment in the principal action. The purpose of the main action is to recover a money judgment. An ultimate review of the costs imposed pursuant to Pa.R.C.P. 4019(g), therefore, can be achieved at the time of reviewing the final judgment. Meanwhile, the right of review will not have been lost. Indeed, by refusing an interim review of the sanction order, the main action can proceed uninterrupted to a final judgment; and thereafter, the final judgment, as well as interlocutory orders entered by the court, can be reviewed in one appeal.

342 Pa.Super. at 409, 493 A.2d at 87.

We believe that this analysis and reasoning applies with equal force to the present case. Our supreme court has admonished "whenever possible, review must await the determination of a suit notwithstanding any resulting incon-

venience to a party." *Pugar v. Greco,* 483 Pa. 68, 75, 394 A.2d 542, 546 (1978). Moreover, the Third Circuit Court of Appeals has consistently held that sanctions imposed following a finding of civil contempt are not reviewable until the underlying litigation has terminated. In *Cromaglass Corporation v. Ferm,* 500 F.2d 601 (3rd Cir.1974) (*en banc*), the plaintiff appealed an order imposing sanctions for failure to answer interrogatories. Part of the order imposing sanctions included a finding that the plaintiff and his attorney were in civil contempt as well as the joint imposition of costs in the amount of $4000.00 against both the plaintiff and his attorney. The court held that the part of the order which held the plaintiff in civil contempt and imposed monetary sanctions upon him was interlocutory and not appealable until final judgment in the main action. *Id.* at 604; *See DeMasi v. Weiss,* 669 F.2d 114, 122 (3d. Cir.1982) (party has no immediate right to appeal from civil contempt citation imposed to gain compliance with a discovery order, but must await final judgment to have order reviewed unless review of the interlocutory order is granted by permission); *Eastern Maico Distributors v. Maico–Fahrzeugfabrik,* 658 F.2d 944 (1981) (neither final order doctrine nor collateral order exception permits appellate court to exercise jurisdiction over appeals from order imposing monetary sanctions for breach of discovery obligations).

If we are to do more than merely pay lip service to this Commonwealth's stated policy against piecemeal appeals, we, like the federal courts, must adopt a strict definition of finality. As we recently stated in *National Recovery Systems v. Perlman,* 367 Pa.Super. 546, 551, 533 A.2d 152, 154 (1987):

> [b]oth the bench and bar would be better served by a return to the strict definition of final order given in *Pugar v. Greco:* 'one which usually ends the litigation, or alternatively, disposes of the entire case', 483 Pa. 68, 73, 394 A.2d 542, 545 (1978), at least as to one party to the suit.

■ While we recognize that the return to the strict view of finality may be best effectuated via a rule of procedure, rather than by the common law, we cannot close our eyes to the inconsistent results and logic which pervade Pennsylvania case law with respect to the appealability of various orders. There is no apparent logic in applying one method of analysis to discovery sanctions imposed on a party for failing to comply with a court order and a different analysis to sanctions issued following a finding of civil contempt, especially since a finding of civil contempt frequently precedes imposition of discovery sanctions. We conclude that the appropriate method of analysis to determine the appealability of such orders is to determine whether the order constitutes a final order within the strict definition, that is, whether it ends the litigation or disposes of the entire case. If the order does not constitute a final order, it is interlocutory. Review of such an interlocutory order may only be had if the right involved constitutes an important right which is purely collateral to the main action and which may be lost if immediate appellate review is not allowed, or if permissive review of the order is not granted. In *Firestone Tire and Rubber Company v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 673–74, 66 L.Ed.2d 571 (1981), the Supreme Court of the United States explained:

> [The] rule that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits, serves a number of important purposes. It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of 'avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment.' (citations omitted).

If ever there were a case where reviewing an order prior to resolution of the entire case would undermine the authority and independence of the trial judge, this is it. Appellant has kept this case on the docket for fourteen (14) years as a result of his flagrant disregard of the trial court's orders. To review this order prior to final judgment in the main action would merely serve to further stifle the expedition of the underlying accounting action. Because the order in this case is of a type that invariably involves no determination of the substantive rights in the underlying litigation, Gabler should be required to raise all of his grievances following judgment in the primary action, at which time both the propriety of the $10,000 payment and the final accounting may be reviewed. Accordingly, for all of these reasons, the present appeal must be and is hereby quashed.

APPEAL QUASHED.